# El Pueblo v. Dones.

## Apelación procedente de la Corte de Distrito de Humacao.

No. 45.    Resuelto en diciembre 5, 1905.

PRUEBAS.—CONFESIÓN DEL ACUSADO.—La confesión que del delito hubiere hecho el acusado á otras personas, es admisible como prueba en contra de él, en tanto no se demuestre que se obtuvo por coacción, violencia, promesa, ó por otro medio que obligara á la voluntad á obrar en ese sentido, por estímulos poderosos y capaces de violentar, en tal forma, la conciencia.

ID.—TESTIMONIO DE REFERENCIA.—Las declaraciones de testigos con respecto á la confesión que del delito les hubiere hecho el acusado, no pueden estimarse como testimonio de referencia, siendo, por el contrario, una prueba de carácter directo de los actos del acusado, y perfectamente admisible.

APELACIÓN.—INSTRUCCIONES DE LA CORTE AL JURADO.—En toda causa criminal, los abogados tienen perfecto derecho para someter á la Corte instrucciones

por escrito, ampliando ó corrigiendo las ya dadas por el tribunal, y pedir á éste que las comunique al jurado, y si no ejercitaren tal derecho, y hubieren manifestado durante el juicio su conformidad con las instrucciones dadas por el tribunal, no podrán, después, impugnarlas, por erróneas ó deficientes.

Id.—Notas del taquígrafo.—Para que las instrucciones de la Corte, tomadas taquigráficamente, puedan formar parte de la transcripción de autos y ser utilizadas en la apelación, es necesario que consten en ella los endosos en que se consigne la resolución del tribunal, y que aparezcan firmadas por el Juez; y de ese modo, las objeciones contra las mismas podrán considerarse como si estuvieran contenidas en un pliego de excepciones ó relación de hechos.

Id.—Pruebas.—Veredicto de culpabilidad.—Para impugnar el veredicto de culpabilidad por ser contrario á la prueba, es necesario fundarse en los elementos de prueba sometidos á la consideración y apreciación del jurado, sin que pueda hacerse uso de aquellos elementos que fueron rechazados por la corte inferior.

Id.—Pliego de excepciones.—Relación de hechos.—Para que el Tribunal Supremo pueda considerar, en una apelación, la apreciación de la prueba, á fin de determinar si el veredicto es contrario al resultado de la misma, es necesario que la transcripción contenga un pliego de excepciones ó una relación de hechos, preparado el primero de acuerdo con los artículos 298 y 299 del Código de Enjuiciamiento Criminal, y la segunda, según lo dispuesto en la Regla 17 de las dictadas para las cortes de Distrito.

Id.—Notas del taquígrafo.—Minutas de la corte.—Aún cuando las notas del taquígrafo constituyen *prima facie* las minutas de la Corte, éstas deben contener solamente una breve relación ó *memorandum* de los hechos ocurridos en el juicio, y nunca han comprendido en su significación las declaraciones testificales, por lo que no pueden ser consideradas como pliego de excepciones ó relación de hechos.

Id.—Si no hubiere pliego de excepciones ó relación de hechos, ni apareciere de la transcripción de autos ningún error fundamental que justifique la concesión de un nuevo juicio ó la revocación de la sentencia, ésta debe ser confirmada.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José Guzmán Benitez.*

Abogado del apelado: *Sr. Rossy, Fiscal.*

El Juez Asociado Sr. Figueras, emitió la opinión del tribunal.

El caso sometido á la decisión de esta Corte Suprema, es un recurso de apelación interpuesto por Francisco Dones Ramos, contra sentencia del Tribunal del Distrito de Humacao que le condenó á la pena de muerte.

El fiscal de dicha corte presentó contra el apelante acusación que juró el veinte y uno de marzo del año corriente

imputándole, en unión de otros, el delito de asesinato en primer grado cometido del modo siguiente:

"Que allá por el día veinte y cinco de Febrero de mil novecientos cinco, en el pueblo de San Lorenzo, dentro del Distrito Judicial de Humacao, Puerto Rico, el acusado Francisco Dones, allí y entonces, con malicia premeditada, expresa y de propósito firme y deliberado, infirió con un puñal una herida mortal á José Cordovés Berríos, á consecuencia de la cual falleció el dicho Cordovés Berríos el día primero de Marzo de mil novecientos cinco.—Y que el acusado José Ramón Anguita, ilegalmente aconsejó é incitó con malicia premeditada, expresa, al referido Francisco Dones á perpetrar dicho delito de asesinato.—Y que el acusado Isidro Guzmán, ilegalmente aconsejó é incitó con malicia premeditada, expresa, al referido acusado Francisco Dones, en la comisión del susodicho delito de asesinato.—Y que la acusada María Rodríguez, ilegalmente incitó y aconsejó con malicia premeditada, expresa, al mencionado acusado Francisco Dones á la comisión de dicho delito de asesinato.—Este hecho es contrario á la ley para tal caso prevista, y á la paz y dignidad de "El Pueblo de Puerto Rico""

Con fecha veinte y tres de marzo del año actual el acusado Francisco Dones Ramos hizo la alegación de "no culpable" en propia persona.

Con fecha diez de abril siguiente y en corte abierta se dictó una orden decretando la separación de la causa de Francisco Dones Ramos de la de los demás acusados, para que fuera dicho Dones juzgado separadamente, y así continuó este proceso su curso ordinario.

Se siguió, pues, este juicio ante la Corte del Distrito de Humacao y tuvo su término en dos sesiones sucesivas de los días 17 y 18 de abril de 1905 y, después de las instrucciones dadas al jurado por el juez de derecho, regresó aquél á la corte trayendo el siguiente veredicto:

"*Nosotros*, el Jurado, encontramos al acusado Francisco Dones Ramos, culpable del delito que se le acusa, ó sea de asesinato en primer grado."

El veinte y cuatro de abril último y en vista de que el

acusado nada alegó contra el pronunciamiento de la sentencia se dictó ésta en la siguiente forma:

"Por lo tanto, la Corte, después de haber visto, entendido y considerado suficientemente el asunto, ordena, adjudica y decreta, que el acusado Francisco Dones Ramos, convicto del delito de asesinato en primer grado, sea trasladado por el Marshal de la Corte de Distrito de Humacao, dentro del término de diez días, de la Cárcel de Distrito de Humacao, á la Penitenciaría de la Isla de Puerto Rico, y allí sea custodiado con toda seguridad por el Alcaide de dicha Penitenciaría, hasta el viernes día veinte y seis del mes de junio de 1905, en cuyo día y entre las horas de las nueve de la mañana y las cinco de la tarde, dicho acusado, Francisco Dones Ramos, será colgado por el cuello hasta que halla expirado, por el dicho Alcaide de la Penitenciaría, ordenándose además, por el Secretario de esta Corte de Distrito, se libre al Marshal del Distrito una copia certificada del veredicto del Jurado y de la sentencia de esta Corte, en este caso, debiendo el Alcaide de dicha Penitenciaría informar debidamente á esta Corte sobre el exacto y fiel cumplimiento de esta sentencia, con las costas correspondientes.—Dada en Humacao, bajo mi firma, á los veinte y cuatro días del mes de abril de mil novecientos cinco.—J. A. Erwin, Juez de la Corte de Distrito de Humacao.—Certifico.—Enrique Rincón.—Secretario Corte de Distrito de Humacao."

El abogado don José M. Cuadra á nombre del acusado interpuso recurso de apelación para ante esta Corte Suprema y quedó, por tanto, y por orden del juez sentenciador suspendido el mandamiento de ejecución.

No hay pliego de excepciones, ni moción para nuevo juicio, ni otras alegaciones.

Todo lo que hasta aquí se ha reseñado consta en este rollo de apelación en dos certificaciones que ocupan los folios 1, 2, 3, 4, 5, 103, 104, y 105 expedida por el secretario de Humacao con su firma y sello de la corte y afirmando que es copia fiel y correcta de las actuaciones obrantes en el récord.

Los folios intermedios desde el seis al ciento dos, ambos inclusives, contienen una transcripción de las notas ta-

quigráficas y en la que se detalla el testimonio de veinte y cinco testigos presentados por el fiscal y once de la defensa por medio de preguntas y respuestas, se hacen constar las instrucciones dadas al jurado por el juez, sin que aparezca en la transcripción la firma de éste, se expresa que las parte manifestaron que no creían necesario ampliar esas instrucciones, y después el taquígrafo don Arturo Muñiz certifica que lo anterior es copia fiel y exacta de las notas taquigráficas tomadas por él en el acto del juicio firmando dicha certificación como tal taquígrafo de la Corte de Distrito de Humacao.

Teniendo por base los antecedentes reseñados, presenta el letrado don José de Guzmán Benítez á nombre de Francisco Donés Ramos ante esta Corte Suprema un alegato en el cual después de un trabajo narrativo y minucioso sostiene que se han cometido los siguientes:

## ERRORES DE DERECHO

*Primero*: Porque se han admitido como prueba de confesión del acusado, las declaraciones de referencia de dos testigos, nombrados Ruperto Félix Meléndez y Juan Díaz.

*Segundo*: Porque cometió error la Corte al dar las instrucciones al Jurado sobre la interpretación del art. 206 del Código Penal.

*Tercero*: Porque también lo cometió al instruir al Jurado sobre la eficacia de la prueba de confesión del acusado, suministrada por referencia de los dos citados testigos.

*Cuarto*: Porque se cometió error con la tolerancia observada con el Fiscal, consintiéndole interrogaciones sugestivas, mientras que á la defensa se le limitó su derecho al preguntar y repreguntar á los testigos.

*Quinto*: Porque se ha cometido error al no admitir toda la prueba testifical propuesta por la defensa para impugnar la veracidad de los testigos ya indicados, Ruperto Félix Meléndez y Juan Díaz.

## ERRORES DE HECHO.

El veredicto se dice que es contrario al resultado de las pruebas.

*Primero*: Porque admite como cierto que el acusado estuvo en San Lorenzo el sábado veinte y cinco de febrero por la noche.

*Segundo*: Porque, aún suponiendo que Dones hubiese estado esa noche en San Lorenzo, el veredicto admite como probado que fué el acusado el que mató á José Cordovés Berríos.

*Tercero*: Porque admite como probada la confesión de Dones por las declaraciones de los dos testigos Meléndez y Díaz, no obstante, resultar probada la falsedad de dichas declaraciones.

*Cuarto*: Porque admite como probada la historia del puñal encontrado en unas matas de calabaza, así como la confidencia hecha al Fiscal para que éste enviase después al Capitán Guerrero á buscar durante dos horas dicho puñal.

*Quinto*: Porque admite como probado que el cuchillo así encontrado, es de la propiedad y uso de Francisco Dones, por las declaraciones de Agustín Collazo y de Ramón Martínez, que, por sí solas no constituyen prueba sobre el particular por ser inverosímiles.

*Sexto*: Porque admite como probado que con ese cuchillo se ha cometido el asesinato de José Cordovés Berríos, sin que se haya intentado siquiera comprobar pericialmente, si el tal cuchillo tiene manchas ó vestigios de sangre humana.

Reasumiendo su alegato el apelante sostiene que el veredicto es contrario, á derecho y á las pruebas y fundado en el artículo 303 del Código de Enjuiciamiento Criminal é invocando las facultades que tiene este Tribunal con arreglo al 364, solicita la revocación de la sentencia, anulación del juicio celebrado en esta causa y la celebración de otro.

El fiscal impugnó el recurso y pide que se desestime con las costas.

Tanto el abogado del acusado, como el fiscal, sostuvieron oralmente en el acto de la vista sus respectivas pretenciones informando todo el tiempo que creyeron necesario á los fines que perseguían.

Consideremos en primer término el supuesto error de derecho que se supone cometido al admitirse como prueba las declaraciones que se llaman de referencia. Son éstas, según el alegato presentado ante esta Corte Suprema las rendidas por Ruperto Félix Meléndez y Juan Díaz. Esos testigos, según se dice, refieren la confesión que les hizo el mismo acusado y esto no se opone bajo concepto

alguno á lo que dispone el artículo 7 del Código de Enjui-
ciamiento Criminal ni puede sostenerse que esas declara-
ciones sean de referencia para deducir de ahí que se co-
metió el error de derecho que se señala con el número
primero en el alegato que estamos examinando.

Este Tribunal en la causa de *El Pueblo de Puerto
Rico* contra *Juan de Mata Eligier* y *Juan del Carmen
Grolo,* procedente de Arecibo y que se falló en 20 de no-
viembre de mil novecientos cinco al considerar esta mis-
ma cuestión dijo:

"Este punto ha sido discutido ampliamente y resuelto en veinte
y cinco de junio de mil novecientos cuatro en la causa contra Fran-
cisco Rivera (a) Panchito, en la que se hacía referencia á un nú-
mero suficiente de autoridades, incluyendo, entre otras, la obra de
Derecho de Cooley sobre limitaciones Constitucionales, página 379 á
383 inclusives, y á la de Greenleaf sobre prueba ó evidencia, artí-
culos 214 y 215. Con respecto á este punto, no juzgamos necesario
citar otras autoridades. Claramente se ve que la alegación no es
buena y que ha sido presentada á virtud de una errónea aprecia-
ción de la ley."

No, esas declaraciones no son de referencia.

Están consideradas como propia confesión del acusado
y es válida en tanto en cuanto no se demuestre que se
obtuvo por coacción, violencia, promesa ó por algo que
obligara á la voluntad á obrar en ese sentido por estímu-
los poderosos y capaces de violentar en esa forma su con-
ciencia. Están esas declaraciones admitidas en el derecho
penal americano que es donde debemos buscar la génesis
de nuestras leyes penales sustantiva y adjetiva.

Pero hay que dejar aquí consignado que el estudio de
este motivo del alegato se hace únicamente en gracia á la
grandísima importancia de esta causa. Preferimos ante
esta última consideración ser tolerantes hasta donde sea
posible. Y decimos esto, porque más después veremos que
ni por un simple alegato ante esta corte ni por medio de
transcripciones de notas taquigráficas podemos saber lo

que declararon los testigos y si ellos son ó no de referencia. Hay en la ley un medio adecuado de traer en apelación con toda la autenticidad necesaria todo cuanto á la prueba se refiere.

Pasemos al segundo error de derecho que se cree cometido al interpretarse por el juez el art. 206 del Código penal. Ese artículo previene que ninguna persona puede ser convicta de asesinato "á menos que el hecho de haber sido causada la muerte por el acusado se pruebe de modo que no haya lugar á duda razonable." Con esta ocasión se copia en el alegato la parte de las instrucciones dadas al jurado tendentes á explicarle lo que debe entenderse por "duda razonable" y á la verdad que no encontramos nada reprochable en los conceptos que se transcriben. Pero hay más, el juez invitó a los abogados del acusado y al fiscal para que manifestasen si creían necesario ampliar las instrucciones en cualquier sentido y todos manifestaron que no. Este hecho en el acto de la vista de esta apelación se reconoció como cierto por ambas partes y esto demuestra la completa imparcialidad por parte del juez de derecho por más que en el alegato, el abogado encargado de la defensa del acusado ante esta Corte Suprema se se muestre inconforme con esas instrucciones porque esto revela, por su parte, celo en el ejercicio de sus deberes profesionales que le obligan á agotar todos los medios legales posibles en pro de la defensa de su patrocinado, pero no se demuestra con ello que el referido juez de derecho fuese realmente deficiente en sus instrucciones.

Aparte de estas consideraciones y prescindiendo de la negativa expresa para ampliar las instrucciones á que se invitó á los defensores, nuestro Código de Enjuiciamiento Criminal en su artículo 266 consagra de modo categórico el derecho que tienen las partes de "presentar un resumen por escrito pidiendo que se comuniquen al jurado ciertas instrucciones. Entonces el Tribunal, si estima ese

resumen exacto y pertinente, debe comunicarlo, denegándolo en caso contrario, siendo deber del Tribunal consignar al dorso de todo resumen la providencia que recayere y si una parte de ese resumen ó instrucción se comunicare rechazándose la otra, el Tribunal debe hacer la debida distinción, indicando la parte que haya sido comunicada al jurado y la que haya sido denegada.''

De modo que aún suponiendo que las instrucciones dadas al jurado fueran deficientes ó erróneas, que no lo creemos, tenían los abogados que intervinieron en la corte de Humacao un derecho consignado en la ley para completarlas ó corregirlas hasta donde el tribunal lo considerase pertinente y si no ejercitaron ese derecho ni aún estimulados por la invitación espontánea del juez de derecho, hoy no es posible señalar con fruto deficiencias ó errores en esas instrucciones cuando en el acto del juicio se consideraron por la representación del mismo acusado como suficientes y ajustadas á la ley.

Esas instrucciones transcritas por el taquígrafo ocupan siete folios y se extienden en consideraciones sobre lo que es la ''malicia premeditada;'' puntualiza y discute la premeditación explicando cuando es expresa y cuando es tácita relacionándola con la intención, cuya existencia se prueba por el acto mismo delictivo; razona sobre el respeto que merece la vida de todo hombre; considera lo que es el elemento ''acecho'' por las circunstancias que le caracterizan y después afirma que si en tales circunstancias y buscando de antemano el sitio oculto y solitario protegido por la oscuridad de la noche y, aprovechando el momento en que la víctima no puede defenderse, se le acomete y se le mata, entonces el delito que se ejecuta es el de asesinato en primer grado, siendo de segundo grado la muerte ilegal de un ser humano con malicia y premeditación; manifiesta luego el juez que la culpabilidad ó inocencia del acusado depende

de la prueba; define ésta y la considera en sus dos aspectos, directa ó indiciaria ó circunstancial; habla de la necesidad de apoyarse en la mayor parte de los casos en el segundo género de prueba porque el instinto de la propia conservación lleva á el hombre á eludir la presencia de testigos cuando trata de cometer un acto delictivo, y explica el juez que tanto la una como la otra prueba sirve para llevar la convicción al ánimo de los jurados que tienen que decidir en su conciencia y en este caso si el acusado estaba ó no la noche de autos en San Lorenzo; tienen que examinar las piezas de convicción y decidir también en su conciencia si el puñal que tienen á la vista es ó nó de Dones; si se encontró en la forma y en el sitio que él indicó en su confesión y si fué el arma que causó la herida mortal á Berríos, deben los jurados pesar cuidadosamente las declaraciones de todo testigo aquilatando el valor de cada testimonio que ha de ser tanto más aceptable cuanto mejor sea el concepto que les merezca el testigo que depone; deben considerar las declaraciones de los testigos que dicen que el acusado les confesó su delito; deben tener en cuenta las contradicciones, si las hay, é inclinarse hacia donde crean honradamente que existe la verdad y, partiendo del hecho cierto de la muerte de don José Cordovés Berríos, tienen que decidir si el hombre que ha traído á la corte el fiscal y que determina en su acusación, es ó nó culpable y en qué grado de los dos en que se divide el asesinato; explica por último lo que debe entenderse por "fuera de duda razonable" que no quiere decir "sin duda alguna", porque sería imposible que la conciencia llegara á un criterio de certidumbre valiéndose de medios falibles dentro de la imperfecta naturaleza humana. "Fuera de duda razonable" quiere decir que después de examinar el jurado el valor de toda la prueba con ánimo desapasionado y sereno y puestas en frente de todas las contradicciones que se adviertan,

se llegue á la convicción moral de la culpabilidad ó inocencia del acusado.

Esas son en síntesis las instrucciones que sin la autencidad necesaria, se traen en notas taquigráficas.

En ella se apoya el apelante para impugnarlas y nosotros, en atención á la importancia y gravedad de este caso en que se trata de la vida de un hombre y en honor á la ilustrada defensa, nos hemos detenido á considerarla y, no obstante la manera imperfecta é impropia con que han sido traídas á esta apelación, creemos que llenan las exigencias del artículo 206 del Código Penal y 266 del Código de Enjuiciamiento Criminal.

Y decimos que la forma es imperfecta é impropia porque á ello nos autoriza el artículo 300 del citado Código de Enjuiciamiento Criminal.

Si consideramos que las instrucciones al jurado fueron tomadas por taquígrafo, era necesario que esas notas vinieran con los endosos en que se consignase la resolución del Tribunal y así formarían parte del acta y cualquier error del mismo podría utilizarse en la apelación de igual modo que si se hubiera consignado en la exposición de hechos ó declaración de excepciones. Pero ya hemos visto que en la transcripción taquigráfica nada de eso consta ni aún la firma del juez, y entonces teníamos razón al afirmar que podíamos prescindir de toda consideración en el punto referente á las instrucciones.

Es necesario considerar el quinto error de derecho consistente, según se afirma, "en no admitir toda la prueba testifical propuesta por la defensa para impugnar la veracidad de los testigos Ruperto Félix Meléndez y Juan Diaz", porque algo hay en el récord propiamente dicho. Efectivamente consta que á una lista de testigos presentada por la defensa y que no fué incluída en los testigos juramentados en el día anterior, la corte negó que fuesen examinados y el abogado en el acto manifestó que tomaba

excepción; pero la corte considera luego este incidente oyendo al letrado defensor y por fin resuelve que sean examinados cinco de los testigos de la lista y hay que suponer que fueran elegidos por la propia defensa y que declararon, toda vez que no consta después protesta alguna ni excepción de ningún género sobre este particular. Hay que suponer pues, que hubo en este punto perfecta conformidad. No constan los nombres ni número de los testigos.

No podemos tampoco prescindir de considerar el sexto error de hecho á que se refiere el alegato del apelante porque supone que no pudo tenerse como probado que con el cuchillo encontrado se cometió el asesinato de José Cordovés Berríos sin que se intentase siquiera comprobar pericialmente si el tal cuchillo tiene manchas ó vestigios de sangre humana.

Si efectivamente en el arma ocupada existía alguna mancha á simple vista perceptible y que indujese al ánimo á sospechar que fuese sangre, esa diligencia pericial de reconocimiento hubiera sido pertinente en su oportunidad así como la autopsia con el informe médico consiguiente. Pero esas circunstancias, según se afirma, no se llevaron al jurado y éste con la prueba que á su presencia se practicó apreciada en conjunto, ha dado por probado ese hecho y los demás necesarios á engendrar el veredicto de culpabilidad . Este no puede combatirse con la prueba que dejara de practicarse. Hay que combatirlo demostrando en forma los errores cometidos al apreciar la la prueba practicada.

No podemos prestar la misma consideración á los demás motivos á que se refiere el apelante en su alegato presentado ante esta Corte Suprema. Si se lee con detenimiento ese escrito, se verá que sustancialmente los supuestos errores de derecho 4o. y 1o. al 5o., de hecho, se contraen á la apreciación de la prueba al extremo de que

los últimos están comprendidos bajo el rubro "El vere-
dicto es contrario al resultado de las pruebas."

¿Cómo podríamos nosotros formar con esas simples
notas taquigráficas un juicio contrario al que formaron
los doce ciudadanos que constituyeron el jurado que co-
mo dicen muchos defensores de esta institución es ante
todo y sobre todo el órgano de la conciencia popular?.

¿Cómo podríamos precisar nosotros sin peligro para
los altos fines de la justicia que el juez consintió al fiscal
preguntas sugestivas, que limitó el número de los testigos
de la defensa y que el jurado se equivocó al dar por pro-
bado en su honrada conciencia que Dones estuvo en la
noche del crimen en San Lorenzo, que mató á José Cordo-
vés Berríos, que se encontró el arma homicida en el sitio
en que el mismo acusado la ocultó, según la confesión que
éste hizo á Ruperto Félix Meléndez y que ese cuchillo
era de la propiedad y uso constante del acusado Francis-
co Dones Ramos?.

En manera alguna. Esas notas taquigráficas pudieron
perfectamente servir para redactar un pliego de excepcio-
nes ó mejor una exposición de hechos.

En cuanto á las excepciones, el capítulo 6o. expresa
cuándo las puede oponer el acusado y en qué caso, y de-
sarrolla la forma y manera que en cada ocasión es indis-
pensable para que pueda surtir sus efectos en un recurso
de esta índole precisando el art. 299, que el escrito ó decla-
ración de excepciones, debe contener solamente las prue-
bas que fueren necesarias para exponer los puntos de
derecho en que se basen las excepciones y facultando al
juez al resolverlas estén ó nó conformes las partes para
eliminar todos los demás extremos contenidos en la de-
claración.

Y en cuanto á la exposición de hechos hay que atender
á la regla 17 de las dictadas para las Cortes de Distrito

de la isla aprobadas por el Hon. Attorney General, que dice así:

"Después del juicio de una causa la defensa ó la acusación podrá hacer una relación escrita de los hechos presentados como prueba en el juicio, y someter la misma á la parte contraria, ó á su abogado, para su exámen. Tal relación de hechos deberá contener un lleno y completo estado de todos los hechos presentados como prueba en el juicio de la causa, expresando el testimonio de cada testigo en forma concisa y narrativa, y también incluyendo copias de todos los documentos presentados como prueba, y la certificación de las partes ó sus Abogados así lo justificará. Si el acusado ó su abogado y el Fiscal, llegaran á un acuerdo sobre la relación de hechos, ésta será sometida al Juez, quien, si la encuentra correcta, la aprobará y la firmará, y se entregará en Secretaría, y una copia de ella, será incorporada en la transcripción, á los efectos de la apelación. Si las partes no llegaren á un acuerdo, la relación de hechos será entonces preparada por el Juez, quien deberá certificarla, y también certificará que las partes no llegaron á un acuerdo. Tal relación de hechos, debe ser formada y entregada en Secretaría, dentro del término que la Corte designe, no excediendo del tiempo fijado para la aprobación del pliego de excepciones."

De todos modos, ya se trate del caso en que el veredicto sea contrario á derecho ó á las pruebas, ó ya se trate de la decisión del juez admitiendo ó denegando testimonios, siempre resulta que nos falta aquí el pliego de excepciones ó la exposición de hechos que tuviera la garantía de la exactitud de lo que realmente ocurrió en el juicio, garantía que hubiera adquirido el pliego ó la exposición con la conformidad del fiscal á ser posible y en todo caso con la aprobación del juez que es la tendencia de las disposiciones anteriormente citadas.

Y aquí podría presentarse por parte del apelante la objeción de que las copias taquigráficas escritas en maquinilla "constituyen *prima facie* del acta del juicio y podrán usarse al hacerse cualquier moción para la celebración de un nuevo juicio, revisión ó apelación del mismo, en los casos en que el acta del Tribunal sea necesa-

ria'', según así se dice en el último inciso de la sección 5a. de la ley aprobada en 10 de marzo de 1904, ''creando las plazas de taquígrafos-reporters de los tribunales de distrito, determinando sus deberes y fijando sus sueldos y compensaciones.''

Pero ya este punto ha tenido su debida consideración y se ha fijado el verdadero sentido y alcance que tiene ese precepto en el caso de *El Pueblo de Puerto Rico* contra *Juan de Mata Eligier* y *Juan del Carmen Groló* fallado por este Tribunal Supremo en veinte de noviembre de mil novecientos cinco y en el caso de *El Pueblo de Puerto Rico* contra *Eusebio Torres Candelaria* que se sentenció en veinte y ocho de noviembre de mil novecicento cinco, ambos procedente de la Corte de Arecibo.

Allí se dijo que hay un error en la traducción española porque en la edición inglesa dice que esas copias constituirán *prima facie* de las minutas de la corte, no del acta del juicio (en el concepto de documento firmado por el juez) y la palabra minuta, (*minutes*) significa, según las autoridades que allí se citaron y á que nos remitimos, el sumario breve ó *memorandum* de lo ocurrido en la corte durante las sesiones del juicio, pero jamás en las minutas se han incluído las declaraciones de los testigos que es lo que se trae aquí para deducir la pretención de un nuevo juicio, y por consiguiente, no pueden esas copias certificadas por el taquígrafo constituir prueba *prima facie* de lo que en relación con la prueba ocurrió en el juicio celebrado ante la corte de Humacao.

Por último se cita por el apelante en su alegato el art. 364 del Código de Enjuiciamiento Criminal para demostrarnos que tenemos el poder para decretar un nuevo juicio. Esto es innegable. Pero esta facultad no es caprichosa ó arbitraria. Está subordinada á la justicia. Y sí nosotros viéramos hoy que de la acusación misma ó de la sentencia misma, se dedujese de modo evidente un error

fundamental no tendríamos reparo alguno en dictar la resolución procedente para restablecer el derecho conculcado ejercitando esa misma facultad que nos otorga la disposición citada, facultad que ha sido ratificada por la sección 1a. de la ley de la Asamblea Legislativa aprobada en treinta de mayo de mil novecientos cuatro.

Pero aquí no hay nada de eso. Aquí se discute la prueba. Nada se nos demuestra en contrario y tenemos que presumir que el veredicto y la sentencia están de acuerdo con el derecho y con las pruebas.

Así las cosas no cabe más, por sensible que nos sea, que cumplir con nuestro deber, denegando la celebración de un nuevo juicio y confirmando la sentencia que la corte de Humacao dictó en veinte y cuatro de abril del año corriente con las costas al apelante.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados, Hernández, MacLeary y Wolf.