EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* HÉCTOR NOEL BUSIGÓ QUEVEDO, acusado y apelante. EL MISMO *v.* EL MISMO (2 casos más.)

Núms. 10435, 10436 y 10437.—*Sometidos:* Julio 3, 1944. *Resueltos:* Julio 24, 1944.

*Ramos Antonini & Gutiérrez Franqui y Santos P. Amadeo,* abogados del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, ape lado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante fué acusado de asesinato en primer grado, infracción a la Ley sobre Registro de Armas y portar amas. Los dos últimos casos fueron sometidos por la prueba que se presentó en el primero. En el de asesinato el jurado trajo un veredicto de culpabilidad de asesinato en segundo grado, y en los dos casos restantes el juez, por los méritos de la prueba presentada en aquél, declaró culpable al acusado. Apeló en los tres casos para ante este tribunal, y sus recursos han sido consolidados.

Se queja el apelante (1) de ciertas manifestaciones que hiciera el juez sentenciador en presencia de las personas que luego sirvieron de jurados, quienes se hallaban en ese momento en la sala de sesiones; (2) de la negativa del juez a posponer la vista del caso para que los abogados del acusado pudieran preparar debidamente su defensa; y (3) de que la

corte desestimase la moción del acusado para que se declarase un *mistral* con motivo del incidente ocurrido en relación con ciertos testigos del acusado que no habían sido puestos bajo las reglas de la corte y permanecieron en sala oyendo las declaraciones de los testigos de cargo.

El acusado había sido debidamente citado para el juicio que había de celebrarse el 17 de marzo de 1942. Sin embargo, al abrirse la sesión, no se hallaba presente. Tampoco lo estaba su abogado. Informó el márshal a la corte que algunos de los testigos de cargo habían visto al acusado aquella mañana pesando caña en una romana de su propiedad cerca de Sabana Grande. Interrogado luego el licenciado Vicente Palés Matos, quien había representado al acusado en la lectura de la acusación, manifestó: "Señor juez, desde el día de la lectura de la acusación hasta este día no lo he visto para nada. Lo he mandado a buscar distintas veces para que me traiga la prueba con que cuenta y no ha venido nunca, ni ayer ni hoy ni nunca, por lo que yo, en vista de sus actuaciones, me encuentro relevado de su representación, a menos que su Señoría no disponga otra cosa."

En vista de la incomparecencia del acusado, la corte pospuso la celebración del juicio para las dos de la tarde. Manifestó el juez que había dictado orden de arresto contra el acusado y ordenado la citación de los fiadores para mostrar causa por las cuales no debiera confiscarse la fianza. Hallándose presente uno de los fiadores, el cual estaba citado para actuar como jurado en el caso, el juez le impuso de su responsabilidad como fiador y le pidió que cooperase para someter a juicio al acusado.

Al abrirse la sesión a las dos de la tarde, el márshal manifestó haber sido informado que el acusado estaba recluído en la Clínica Perea. En ese momento el fiscal hizo constar que estaba sorprendido de lo ocurrido, que el acusado no había enviado ningún mensaje a la corte exponiendo los motivos que había tenido para no comparecer a juicio, y el juez manifestó que de la Clínica Perea le habían comunicado

que el acusado aquel día había tomado alguna droga que lo había indispuesto del estómago, por lo cual había tenido que ser recluído en aquella clínica y permanecería en ella por lo menos hasta el día siguiente, que sería dado de alta. Pospuso la vista para el día siguiente a las nueve de la mañana, y ordenó que se citara a todos los testigos y a los jurados para que comparecieran entonces.

Al día siguiente compareció el acusado y la corte le advirtió que había sido requerido para que mostrase las razones que tenía para no ser castigado por desacato por no haber comparecido a juicio el día anterior, y para someterlo a juicio en el caso criminal seguido contra él. Le preguntó la corte si tenía abogado, y contestó negativamente. El juez preguntó al márshal si el abogado Eduardo A. Ruiz se hallaba en la corte, y al contestar el márshal afirmativamente, dijo el acusado: "Yo no necesito abogado de oficio. Yo soy contribuyente y puedo pagar un abogado. Lo que necesito es tiempo para buscarlo."

La corte designó al abogado Ruiz para que representara al acusado en el caso de asesinato, y decretó un receso de cinco minutos para que el abogado cambiara impresión con el acusado en relación con el incidente de desacato, al cabo de los cuales el abogado manifestó estar listo para el caso de desacato, y haciendo igual manifestación el fiscal, se dió principio a la vista. Declaró entonces el doctor Nelson Perea que el acusado se presentó en su clínica quejándose de dolores en el bajo vientre, y lo examinó y fué hospitalizado. Manifestó el doctor que no podía asegurar la causa de la indisposición estomacal, que pudo haber sido causada por el estado nervioso en que se hallaba el acusado debido al juicio que tenía pendiente; que también pudo ser causada por cualquier alimento que no hubiera digerido bien. Declararon otros testigos de cargo y de descargo, y también el acusado, reservándose la corte su resolución. Durante todos estos incidentes los señores que habían de actuar como jurados en el caso podían oír y presenciar lo sucedido. Luego se

procedió a la celebración del caso por asesinato, y después de rendido el veredicto, la corte absolvió al acusado del cargo de desacato.

Era deber del acusado estar presente en la sala de sesiones el día señalado para el juicio, y asumiendo que en verdad la enfermedad que motivó su reclusión en la clínica no hubiera sido provocada por él para evadir entrar en juicio, él debió avisarlo a la corte oportunamente, con mayor razón cuanto que su hermano lo había llevado temprano a la clínica y al abrirse la sesión se hallaba en la corte. Era natural que el juez inquiriera si el acusado se hallaba presente, y que sintiera indignación al enterarse de que a pesar de haber sido oportunamente citado no compareciera ni hubiera dado explicación alguna por su ausencia. Al hacer esta investigación el juez no estaba obligado a desalojar el público de la sala de sesiones para que no se enteraran del incidente los probables jurados. Quizás fué innecesario que el juez expresara públicamente lo que dijo le habían informado de la clínica respecto de la causa de la alegada indisposición del acusado, pero ese incidente era tan extraño al juicio por asesinato que iba a ventilarse, que no vemos cómo podía el jurado ser por ello influído en su veredicto. No hay motivos para presumir que por el hecho de que un hombre sea llamado a servir como jurado, su inteligencia se ha de anular de tal modo que el más mínimo incidente en relación con el acusado haya de inclinarle en contra de éste, prescindiendo de la evidencia y de las instrucciones de la corte. Tampoco creemos que la celebración de la vista del caso de desacato y el reservarse el juez su decisión, afectaran o influyeran en su contra ante el jurado, aunque opinamos que es mejor práctica ver el caso de desacato luego que la vista del juicio en el caso principal haya terminado.

No existe a nuestro juicio el primero de los errores señalados.

Dentro de las circunstancias expuestas, el acusado no tenía derecho a que el juicio se mantuviera pendiente hasta

que él tuviese a bien designar un abogado. El abogado Palés Matos declaró que él había requerido repetidas veces al acusado para que viniese donde él con su prueba, y que no había logrado que el acusado prestara atención a sus distintos requerimientos, por lo cual se consideraba desligado de su relación de abogado y cliente con este acusado. Además, el acusado fué citado para juicio con suficiente antelación, y tuvo tiempo de contratar otro abogado si no quería que lo representase el licenciado Palés Matos, especialmente cuando como él mismo dijo al juez, podía pagar a un abogado. Es de perfecta aplicación lo dicho por este tribunal en el caso de *Pueblo* v. *Montaner,* 61 D.P.R. 120, 124:

"Si el acusado era en efecto pudiente, como manifestó la corte y no contradijo aquél, era su deber estar listo con su abogado para el juicio, especialmente cuando, como dijo la corte, él había sido citado para esta vista con quince o veinte días de anticipación. No puede alegar el acusado que se le privara del derecho a asistencia de abogado. Tuvo amplias oportunidades para contratar uno, y si optó por no hacerlo como un medio de obtener la posposición del juicio, suya es la culpa y debe arrostrar las consecuencias naturales de su mala conducta. La garantía constitucional sobre asistencia de abogado no exige que la corte lo nombre a los acusados que tienen medios suficientes para pagar esos servicios. No siendo insolvente el acusado, al designar la corte al abogado Córdova Rivera para que lo defendiera, hizo algo que no venía obligada a hacer. Pudo la corte, dentro de las especiales circunstancias de este caso, celebrar el juicio aunque el acusado no hubiese estado asistido de abogado."

El tercer señalamiento de error no merece seria consideración. Avisado el juez de que tres testigos del acusado se hallaban en la sala de sesiones oyendo declarar los testigos de cargo, les preguntó si eran testigos presenciales, replicando ellos que nada sabían del caso a pesar de que habían sido citados. Era lógico que les preguntara el juez si eran testigos presenciales, porque bien podían serlo de reputación o peritos, y en ese caso su presencia en la sala de sesiones en nada podía afectar sus testimonios. Terminado el incidente, continuó el juicio, sin que estos testigos fueran

llamados a declarar, presentándose luego por el acusado una moción para que la corte declarase un *mistrial* por el hecho de haber preguntado a dichos testigos en presencia del jurado si eran testigos presenciales.

*No existiendo ninguno de los errores señalados por el acusado, procede la confirmación de las sentencias.*