EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN RODRÍGUEZ CORREA, acusado y apelante.

*Números:* CR-62-359, CR-62-360        *Resueltos:* 26 de junio de 1963

654

*Santos P. Amadeo* y *Enrique González,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Los hechos esenciales, en síntesis, son los siguientes. El apelante y otro individuo tuvieron una riña en la calle Eduardo Conde en Santurce, P.R., con motivo de la cual comenzaron

a tirarse piedras. La pelea produjo la natural alteración de la paz en esa calle y se reunieron allí un número de vecinos y curiosos. A los pocos minutos llegó al lugar de los hechos el policía Rosendo Torres Pabón y comenzó a indagar sobre lo que allí ocurría. Se cruzaron unas palabras entre el policía Torres Pabón y el apelante, y finalmente el policía se llevó al acusado y al otro individuo que participó en la riña al cuartel de la policía de la calle Loíza, cercano de aquel lugar. Al poco rato regresaron estas personas al mismo sitio de los hechos, pues eran vecinos de aquel sitio y minutos después un carro de la policía trajo al guardia Torres Pabón pues éste también vivía allí cerca. Torres Pabón había terminado su jornada de trabajo y regresaba allí para subir a su hogar.

Mientras Torres Pabón conversaba en la acera con uno de los vecinos de la calle, caminó hacia él el apelante y sin que mediara palabra alguna entre ellos, el apelante le propinó un puñetazo al policía por el lado derecho de la cara. Hubo un breve forcejeo entre ambos; el apelante se apoderó del revólver que el guardia tenía en su baqueta y le pegó un tiro. El policía Torres Pabón cayó al pavimento y no hizo ademán de levantarse. Cerca de él quedó de pie, con el revólver en las manos, el apelante. Estando Torres Pabón tendido en el piso el apelante le disparó los otros cinco tiros que le quedaban al revólver.

El médico que hizo la autopsia de Torres Pabón explicó, al declarar en el juicio, que los tiros de que éste fue víctima le penetraron los siguientes órganos: ambos pulmones, la tráquea, el corazón, la columna vertebral, el intestino delgado y el estómago. Cuando Torres Pabón llegó al hospital minutos más tarde ya estaba muerto.

Luego del crimen el apelante se fue de aquel sitio llevándose consigo el revólver del policía. Poco después se presentó al cuartel de la policía de la calle Loíza y se entregó, informando que había matado al guardia Torres Pabón. El

jurado encontró culpable al apelante de asesinato en primer grado y de portación de armas.

■ Señala el apelante dos errores. En el primero alega que el tribunal sentenciador abusó de su discreción al no suspender el juicio según lo solicitaron los abogados defensores, privándose así al acusado de una "activa y efectiva defensa legal."

PRIMER ERROR. Veremos que el tribunal sentenciador no abusó de su discreción al no suspender el juicio el día 9 de agosto de 1960. Ésa era la quinta moción de suspensión hecha por el acusado. Las cuatro anteriores se le habían declarado con lugar. El crimen se cometió el 3 de septiembre de 1959. El juicio fue señalado por primera vez para el 21 de diciembre de 1959. Ese día, a solicitud del abogado defensor se suspendió el juicio y se señaló para el 8 de febrero de 1960. Volvió a suspenderse por segunda vez a solicitud de la defensa y se señaló para el 4 de mayo de 1960, cuando fue suspendido por tercera vez también a solicitud de la defensa. En todas esas ocasiones comparecieron al tribunal los testigos del Pueblo y hubo que despedirlos. Se señaló el juicio para el 12 de julio de 1960 y por cuarta vez volvió a suspenderse a solicitud de la defensa. Se señaló finalmente para el 9 de agosto de 1960, cuando la defensa por quinta vez solicitó la suspensión. Con razón se opuso el fiscal a una nueva suspensión. Señaló al tribunal que ya se habían ido para los Estados Unidos dos testigos del Pueblo.

Argumenta el apelante que uno de los dos abogados que representaron al acusado en el acto del juicio fue nombrado por el tribunal para representarlo en 12 de julio de 1960 y que no tuvo tiempo suficiente para prepararse.

Hemos examinado los trece casos que cita el apelante en su discusión del primer error. En doce de ellos se decidió que la negativa del tribunal sentenciador a posponer el juicio no privó al acusado de su derecho a tener representación legal. Más adelante veremos la naturaleza de estos casos. Solamente

en uno de los casos citados se sostuvo lo contrario, esto es, que la negativa a posponer el juicio privó al acusado de su derecho a ser defendido por abogado. En este último caso las circunstancias fueron tan extremas que no guarda relación con el caso de autos. En dicho caso, *Cass* v. *Commonwealth*, 33 S.W.2d 332 (1930) el acusado fue convicto de asesinato y condenado a muerte. Al presentarse el acusado al tribunal sin abogado el día del juicio el tribunal le designó un abogado y procedió a celebrar el juicio inmediatamente, sin darle oportunidad al defensor para prepararse, y desoyendo su solicitud de que el caso se pospusiese. No hay duda de que el tribunal de apelación tenía que revocar esa sentencia. Claramente esa situación no es la del caso de autos.

De los otros doce casos citados por el apelante los primeros tres, *Pueblo* v. *Montaner*, 61 D.P.R. 120 (1942); *Pueblo* v. *Busigó*, 63 D.P.R. 1006 (1944); y *Romero* v. *Jones*, 78 D.P.R. 572 (1955), no le favorecen. Así lo reconoce el apelante y señala que su caso no es igual a éstos. Los otros casos tampoco le ayudan; veámoslos brevemente:

En *Andrews* v. *Robertson*, 145 F.2d 101 (1944) el acusado fue convicto de violación y sentenciado a muerte. Se levantó el mencionado problema de la falta de adecuada asistencia legal y el tribunal de apelación sostuvo que el acusado tuvo suficiente asistencia legal y confirmó la sentencia. En *Pierce* v. *Hudspeth*, 126 F.2d 337 (1942) el acusado fue convicto de un delito contra la propiedad del correo y sentenciado a 25 años de presidio. La sentencia fue confirmada. En *Hudspeth* v. *McDonald*, 120 F.2d 962 (1941) el acusado fue convicto de conspirar para cometer secuestro. Se denegó el hábeas corpus solicitado. En *Ex parte Haumsesch*, 82 F.2d 558 (1936) el acusado fue convicto de asesinato y sentenciado a muerte. Se denegó el hábeas corpus. En *Smith* v. *State*, 56 A.2d 818 (1948) el acusado fue convicto de violación y condenado a muerte. Se planteó el mismo problema que el apelante ha levantado en el caso de autos. En este caso de *Smith* el abogado

defensor tuvo quince días para prepararse y el tribunal de apelación concluyó que había tenido tiempo suficiente. Se confirmó la sentencia. En *Neighbors* v. *State*, 177 P.2d 133 (1947) el acusado fue convicto de homicidio y sentenciado a veinte años de prisión. También se sostuvo que el tribunal sentenciador no había abusado de su discreción al no acceder a la posposición del caso y se sostuvo la convicción. En *Prescott* v. *State*, 37 P.2d 830 (1934) el acusado fue convicto de asesinato y sentenciado a muerte. Se sostuvo al tribunal de instancia al no acceder a la posposición del juicio y se confirmó la sentencia.

Los últimos tres casos, de los citados por el apelante en la discusión del primer error, son los de *Cass* v. *Commonwealth*, supra, anteriormente discutido, el de *Carter*, infra, y *Gibson*, infra. En *Carter* v. *Commonwealth*, 81 S.W.2d 883 (1935) el acusado fue convicto de asesinato y sentenciado a muerte. Se sostuvo al tribunal sentenciador y la sentencia fue confirmada.

En *State* v. *Gibson*, 50 S.E.2d 520 (1948) las circunstancias también son extremas pero a pesar de ello el tribunal de apelación confirmó la sentencia. El acusado fue convicto de violación y sentenciado a muerte. El tribunal le nombró abogado y señaló la vista del caso para el día siguiente a las dos de la tarde. En dicho día el tribunal procedió a celebrar el juicio con el resultado ya antes dicho. El tribunal de apelación sostuvo al tribunal sentenciador en el ejercicio de su discreción y confirmó. Mencionamos este caso porque el apelante lo cita; no porque lo creamos un modelo.

Como hemos visto, ya que el caso de *Cass* v. *Commonwealth*, supra, presenta una situación tan extrema que es muy distinta a la del caso de autos, y como los otros doce casos fueron resueltos contrario a la posición adoptada por el apelante, esto deja al apelante sin un solo caso de los por él citados que sostenga su posición. Sin embargo, declaramos enfáticamente, si la posición del apelante fuese meritoria, aunque

no hubiese un solo caso en todos los libros de decisiones que se conocen, nosotros le daríamos la razón. Pero la posición del apelante no es meritoria. El apelante estuvo representado en el acto del juicio por dos abogados. De esos dos letrados, el que fue designado por el tribunal fue designado en 12 de julio de 1960 y la vista se celebró el 9 de agosto de ese año. Dicho abogado tuvo veintisiete días para prepararse. Dada la naturaleza del caso tuvo tiempo suficiente. No se trataba de un complejo problema legal, tampoco se trataba de localizar a un número crecido de testigos dispersos por el país o fuera de él; ni se trataba de unos hechos complicados que tomarían largo tiempo en comprenderse. Los hechos eran sencillos, los testigos pocos y residentes en el mismo vecindario. (1)

Hemos leído completa la transcripción de evidencia que consta de 364 páginas. Dicha transcripción demuestra que el Juez Superior que presidió el juicio lo hizo en forma justa e imparcial; que la defensa, en la cual intervinieron los dos letrados, fue activa y competente; y que el fiscal actuó con ejemplar corrección durante el proceso. No hay duda que el derecho de las personas a tener asistencia de abogado en los procesos criminales incluye el derecho a un tiempo razonable para que el abogado pueda entrevistarse con el acusado y para que pueda prepararse para el acto del juicio, sin embargo como dijimos en *Romero* v. *Jones*, supra, a la pag. 577, dicho derecho no puede ser utilizado por el acusado para obstaculizar el trámite normal de las causas. Lo que es tiempo razonable varía de acuerdo con las circunstancias de cada caso en particular. Véase además *Pueblo* v. *Cordero*, 82 D.P.R. 379 (1961).

En *Avery* v. *Alabama*, 308 U.S. 444 (1940) el acusado fue convicto de asesinato. En marzo 21 el tribunal le designó representación legal y el juicio se vio en marzo 24 del mismo

---

(1) La Regla 109 de las nuevas Reglas de Procedimiento Criminal da al acusado un término de por lo menos 20 días para prepararse para el juicio.

año. El Tribunal Supremo de los Estados Unidos confirmó. Véanse además *Michel* v. *Louisiana,* 350 U.S. 91 (1955); *U.S.* v. *Decker,* 304 F.2d 702 (1962) y *Torres* v. *U.S.,* 270 F.2d 252 (1959). El primer error señalado no se cometió.

SEGUNDO ERROR. Mediante el segundo error señalado se alega que el tribunal erró al no instruir específicamente al jurado que éste podría traer un veredicto de asesinato en segundo grado, si debido al estado mental del acusado, éste no pudo cometer el delito con la deliberación y premeditación necesaria para constituir el delito de asesinato en primer grado.

Tampoco se cometió este error. En primer término, dicha instrucción no fue solicitada por la defensa a pesar de que el juez le preguntó si tenían alguna instrucción especial que solicitar (T.E. pág. 347). A esa pregunta del magistrado, la defensa contestó: "Ninguna de nuestra parte". Tampoco la defensa tomó excepción alguna a las instrucciones dadas por el juez al jurado. Al magistrado preguntar a los dos abogados de la defensa si deseaban tomar alguna excepción a las instrucciones que el tribunal había dado, la defensa contestó que ninguna. (T.E. pág. 360.) El acusado que deja de solicitar del tribunal una instrucción sobre determinado punto, no puede alegar como error la omisión de tal instrucción. *Pueblo* v. *García,* 78 D.P.R. 396, 405 (1955); *Pueblo* v. *Cruz,* 78 D.P.R. 80 (1955); *Pueblo* v. *Matos,* 26 D.P.R. 586 (1918); *Pueblo* v. *Llauger,* 14 D.P.R. 548 (1908); *Pueblo* v. *Boria,* 12 D.P.R. 170 (1907); *Pueblo* v. *Robles,* 10 D.P.R. 496 (1906); *Pueblo* v. *Dones,* 9 D.P.R. 469 (1905).

En segundo lugar, las instrucciones del juez fueron ampliamente suficientes en relación con el punto que en este segundo error levanta el apelante. Véanse los siguientes fragmentos tomados de dichas instrucciones:

"Son asimismo incapaces de cometer delito público las personas que cometieren el acto imputádoles sin tener conciencia de ello.

"La epilepsia, señoras y señores del Jurado, de por sí no es eximente en la comisión de un delito público. Si esa epilepsia, no obstante, de tal manera afecta la discreción y juicio del que la padece, que llega un momento en que quedan obnubiladas y anuladas las facultades mentales del que la padece y mientras están así obnubiladas, anuladas, dichas facultades mentales y no puede el sujeto entonces por esa razón distinguir entre el bien y el mal, conocer la calidad y naturaleza del acto que ejecuta, que realiza, o si se da cuenta del acto que realiza, pero por razón de su trastorno mental ocasionado por el deterioro de la epilepsia no puede distinguir entre lo bueno y lo malo ante el concepto de la ley, ese individuo no es responsable ante la ley del delito que se le imputa. Sin embargo, para que pueda invocarse con éxito la defensa de irresponsabilidad por razón de trastorno mental porque no pueda distinguirse entre el bien y el mal, tiene que necesariamente referirse al momento específico de la comisión de los hechos; es durante el momento en que los hechos fueron cometidos que tiene aplicación o vigencia la doctrina de la distinción del bien y el mal, no en ocasión anterior que pueda haber podido distinguir entre el bien y el mal, en ocasiones anteriores, o que pueda distinguir entre el bien y el mal en ocasiones posteriores. Es si al momento de la comisión de los hechos que se imputan podía allí y entonces distinguir entre el bien y el mal y percatarse de la naturaleza y calidad del acto ejecutado. . . .

"Para que una persona pueda ser responsable de un delito, es necesario que tenga inteligencia y capacidad para conocer la criminalidad del acto que realiza. Si su razón y sus facultades están obscurecidas en el momento en que el delito que se imputa, se realiza, entonces no es un agente moral responsable y no debe ser castigado por los hechos criminales que ejecute.

"El standard de responsabilidad es el siguiente: ¿tenía el acusado suficiente capacidad mental para apreciar la naturaleza y calidad del acto realizado? ¿Sabía él que ese acto era una violación de los derechos de otras personas y en sí erróneo? ¿Sabía él que tal acto estaba prohibido por nuestras leyes y que su comisión le traería como consecuencia el castigo y la pena correspondiente a dicho acto? Si él tenía la capacidad para apreciar la naturaleza y comprender las posibles o probables consecuencias de su acto, él es responsable ante la ley por el acto cometido. Si él no tenía la capacidad para apreciar esos factores, entonces su acto no es criminoso y no es responsable ante la ley. La falta de

capacidad mental, para que exima de responsabilidad, señoras y señores, en la comisión de un delito, debe ser una perturbación de la mente de tal naturaleza que inhiba el sentido del bien y del mal con relación al acto ejecutado al tiempo de su perpetración. Debe existir una ausencia de conocimiento de que un acto es malo en su sentido legal a fin de eludir la responsabilidad. . . .

"Señoras y señores del Jurado: si por el resultado de la prueba aquí practicada ustedes están convencidos más allá de duda razonable de que este acusado cometió un delito, que hizo unos disparos a Rosendo Torres Pabón y que esos disparos le ocasionaron la muerte a Rosendo Torres Pabón de manera ilegal, pero ustedes tienen duda razonable de si ese delito cometido por él es un delito de asesinato en primer grado o un delito de asesinato en segundo grado, repito, ustedes no tienen duda, si es que ustedes no tienen duda de que él cometió un delito, pero la duda de ustedes es cuál cometió, el asesinato en primer grado o el asesinato en segundo grado, el deber de ustedes es resolver esa duda en favor del acusado y traerlo culpable del delito más bajo entre los dos grados, o sea, el delito de asesinato en segundo grado. . . .

. . . si creen ustedes, por el resultado de la prueba, que al momento de este ciudadano dar muerte, si es que ustedes llegan a la conclusión de que le dio muerte a Rosendo Torres Pabón, él tenía sus facultades mentales de tal manera afectadas que no podía allí y entonces percatarse de la naturaleza y calidad del acto que ejecutaba y que no podía distinguir allí y entonces entre el bien y el mal, o si tienen ustedes duda razonable y fundada sobre si él podía allí y entonces percatarse de la naturaleza y calidad del hecho que ejecutaba, o de que pudiera distinguir entre el bien y el mal, es el deber de ustedes entonces traer un veredicto declarando al acusado no culpable."

■ Hubo prueba en el sentido de que para el año 1956, aproximadamente tres años antes de los hechos que motivaron este juicio, un médico vio al acusado una vez con motivo de un ataque epiléptico que el acusado había sufrido. Sin embargo, no hubo prueba alguna en el sentido de que al tiempo en que el acusado cometió el crimen estuviese bajo los efectos de un ata-

que epiléptico o de que sus facultades mentales estuvieran perturbadas. Por el contrario los testigos oculares declararon haberlo visto en estado normal. En esas circunstancias y habiendo el acusado estado lúcido y normal al tiempo de los hechos él es responsable de sus actos. Véase *Williams* v. *State*, 343 S.W.2d 263, 264 (1961) ; *Taylor* v. *State*, 104 N.E.2d 104, 107 (1957) ; *People* v. *French*, 87 P.2d 1014, 1019 (1939) ; *People* v. *Tucker*, 78 P.2d 1136, 1137 (1938).

*Se confirmarán las sentencias dictadas por el Tribunal Superior, Sala de San Juan, en estos dos casos en 15 de agosto de 1960.*