El Pueblo de Puerto Rico, demandante y apelado, *v.* Antonio Montaner, acusado y apelante.

Núm. 9546.—*Sometido:* Noviembre 10, 1942 *Resuelto:* Noviembre 30, 1942.

*R. Atiles Moréu* y *Ramón G. Goyco,* abogados del acusado; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante fué sentenciado a cinco años de presidio con trabajos forzados por un delito de instigación a perjurio.

Fundamentando su recurso imputa a la corte sentenciadora la comisión de cinco errores. Solamente discutiremos el primero y el tercero; aquél por ser de carácter jurisdiccional y éste por ir dirigido a atacar la suficiencia de la prueba. Bajo el primer señalamiento de error se queja el apelante, (*a*) de no haber estado asistido de abogado durante la lectura de la acusación ni habérsele hecho las advertencias prescritas por el artículo 141 del Código de Enjuiciamiento Criminal; (*b*) de habérsele obligado a entrar a juicio a pesar de sus protestas de hallarse enfermo; y (*c*) de habérsele privado de asistencia efectiva de abogado al nombrárselo la corte festinadamente, sin darle tiempo suficiente para preparar la defensa.

■ En lo que al acto de la lectura de acusación respecta, todo lo que aparece de los autos es lo siguiente: ''El acusado Antonio Montaner, en el acto de la lectura de acusación llevada a cabo el día 29 de julio de 1937, en la sesión de dicho día, hizo alegación de inocente y solicitó juicio por jurado.''

De lo que resulta de los autos, no puede concluirse necesariamente que en el acto de la lectura de acusación el acusado no hubiese estado representado por o no hubiera renunciado inteligentemente a la asistencia de abogado. Pudo haber ocurrido una u otra cosa y ese hecho no aparecer del récord. Tratándose de una corte de jurisdicción general, como lo es la inferior, la ley presume que ha actuado con jurisdicción y que sus procedimientos han sido conducidos con regularidad. *Bank of Commerce & Trust Co.* v. *Kenney,* 165 P. (Cal.) 8; *People* v. *McClennegen et al.,* 234 P. (Cal.) 91; véase también *Pueblo* v. *Rodríguez,* 46 D.P.R. 253, 254.

Además en *Johnson* v. *Zerbst,* 304 U.S. 458, 465, y *Franzeen* v. *Johnston, Warden,* 111 F. (2d) 817, 820, citado este último con aprobación en *Dijols* v. *Lugo, Alcaide,* 58 D.P.R. 445, se sostuvo que si bien es la mejor práctica y lo más conveniente que del récord de la corte aparezca afirmativamente que al

acusado fué ofrecida asistencia de abogado y la rehusó inteligentemente o la aceptó, según fuere el caso, sin embargo tal constancia en los autos no es indispensable para la validez de la sentencia.

██ Para la mejor inteligencia de la discusión de las subdivisiones *B* y *C* del señalamiento de error que estamos considerando, precisa que hagamos una sínteis del incidente que tuvo lugar inmediatamente antes de dar principio a la celebración del juicio.

Al llamarse a la vista del caso, no teniendo abogado el acusado, la corte designó al Lic. Córdova Rivera para que lo representase. Inmediatamente después, dicho abogado, dirigiéndose a la corte, manifestó que el acusado deseaba exponer que hacía varios días se hallaba recluído en cama, que el viernes anterior había enviado una certificación médica por correo y que su estado de salud era tal que le impedía defenderse de una manera eficiente. En contestación a las manifestaciones del abogado, la corte hizo constar lo siguiente: Que la acusación en este caso se había formulado contra varios acusados, quienes habían venido dilatando la celebración del juicio, primero, pidiendo suspensiones que les fueron concedidas, y después solicitando juicio por separado. Que el día señalado para la vista de este caso en el término anterior, el acusado compareció y solicitó la suspensión del juicio alegando que no tenía abogado. Que la corte, al acceder a su solicitud, teniendo conocimiento de que el acusado, su padre y otros familiares eran pudientes, le advirtió que la próxima vez que se señalase el juicio no lo suspendería y que entonces debería comparecer con su abogado. Que aquel día, o sea el en que se celebró la vista de este caso, el acusado, que había sido citado con quince o veinte días de antelación, no compareció, avisando en la mañana de ese día por conducto de su hermano, que se hallaba enfermo y no podía asistir al juicio. Que la corte ordenó su arresto y así fué traído al tribunal; que el acusado no demostraba hallarse en un estado de enfermedad

que le impidiese someterse a juicio, por lo que denegó la suspensión y ordenó la continuación del procedimiento.

No protestó de nuevo el acusado ni en forma alguna expresó su deseo de probar que realmente se hallaba enfermo, apareciendo de los autos que los procedimientos continuaron normalmente hasta su terminación.

En nuestra opinión no erró la corte sentenciadora al no acceder a la suspensión en las condiciones expuestas. Si el acusado realmente se hallaba enfermo, en tal grado que no debía ser sometido a juicio, era su deber acreditar su enfermedad, pues bien podría ser ésta, como aparece haberlo sido en este caso, una mera treta del acusado para obtener una vez más la posposición de la vista. Si el acusado era en efecto pudiente, como manifestó la corte y no contradijo aquél, era su deber estar listo con su abogado para el juicio, especialmente cuando, como dijo la corte, él había sido citado para esta vista con quince o veinte días de anticipación. No puede alegar el acusado que se le privara del derecho a asistencia de abogado. Tuvo amplias oportunidades para contratar uno, y si optó por no hacerlo como un medio de obtener la posposición del juicio, suya es la culpa y debe arrostrar las consecuencias naturales de su mala conducta. La garantía constitucional sobre asistencia de abogado no exige que la corte lo nombre a los acusados que tienen medios suficientes para pagar esos servicios. No siendo insolvente el acusado, al designar la corte al abogado Córdova Rivera para que lo defendiera, hizo algo que no venía obligada a hacer. Pudo la corte, dentro de las especiales circunstancias de este caso, celebrar el juicio aunque el acusado no hubiese estado asistido de abogado.

Pasemos a considerar el tercer señalamiento de error. El delito por el cual fué sentenciado el acusado es el de instigación a perjurio. Para que exista este delito, es necesario probar más allá de duda razonable, (a) que una persona incurrió en perjurio, y (b) que el perjurio fué cometido

por instigación o consejo del acusado. El primer elemento, o sea la falsa declaración, es el *corpus delicti* en el delito de instigación a perjurio. Es necesario probar la falsedad de la declaración, pues si la instigación o consejo del acusado es para que el testigo declare la verdad y así lo hace, rectificando posiblemente una declaración falsa anterior, el acusado no comete, naturalmente, delito alguno.

Prescribe el artículo 36 del Código Penal que todas las personas complicadas en la comisión del crimen, ya cometieren directamente el acto constitutivo del delito o, no estando presentes, hubieren aconsejado su comisión o incitado a ella, son principales o autores en el crimen cometido. De manera, pues, que tanto el instigador como el que aconsejado por éste declara falsamente, son reos de perjurio y pueden ser acusados y juzgados conjuntamente de dicho delito conforme se sostuvo por la Corte Suprema de Estados Unidos en el caso de *Hammer* v. *United States*, 271 U.S. 620. Además, el artículo 18 de la Ley de Evidencia (art. 380 del Código de Enjuiciamiento Civil, ed. 1933) prescribe que la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho, *salvo perjurio* o traición. Aplicando este principio, sostiene la inmensa mayoría de las autoridades que la declaración no corroborada del perjuro propiamente dicho, acerca de la falsedad de su declaración, no es suficiente para sostener un veredicto contra el instigador, si bien no es necesaria la corroboración para probar el otro elemento del delito, o sea la instigación.

En el caso que nos ocupa, José Archilla Piñero testificó haber prestado una declaración jurada ante el Juez de Paz de Jayuya, actuando éste como magistrado instructor, donde imputaba al acusado en este caso y a otros, el delito de homicidio voluntario cometido en la persona de un tal Auffant; y que posteriormente prestó otra declaración ante el mismo juez de paz en presencia del acusado y otras personas, en la que instigado por el juez de paz y por este acusado, falsamente

y a sabiendas de su falsedad declaró bajo juramento que él, Archilla, no conocía a las personas que agredieron a Auffant, de este modo exonerando al acusado Montaner de toda responsabilidad por la muerte de Auffant.

La única evidencia que aparece en el récord al efecto de que esta segunda declaración ante el juez de paz fuese falsa, es el testimonio no corroborado que en este caso prestó el propio Archilla. Es más, sabemos del contenido de la primera declaración ante el juez de paz por el testimonio del propio Archilla, pues dicho funcionario había fallecido en la fecha en que se celebró el juicio de este caso, y según Archilla, la primera declaración fué destruída y sustituída por la segunda, y aunque el jefe de distrito de la Policía Insular, Sr. Emmanuelli, fué llamado como testigo del fiscal, no fué examinado sobre el contenido de la primera declaración que él escribió en maquinilla y dictó el testigo Archilla.

El fiscal de este tribunal admite que no hubo corroboración de la declaración de Archilla en lo que al perjurio respecta, pero sostiene que a su juicio tal corroboración es innecesaria, toda vez que, según él, la persona sobornada o instigada y el que lo instiga a cometer el delito no son cómplices, y cita la regla de la minoría expresada al final de la monografía que aparece en 56 A.L.R. 407; los artículos 131 y 132 del Código Penal; y dos casos de este tribunal, el de *Forastieri* v. *Calzada,* 53 D.P.R. 251, y *Pueblo* v. *Montalvo,* 58 D.P.R. 315.

El artículo 131 del Código Penal define el delito de soborno de testigos y el 132 el de aceptación de soborno, los cuales constituyen dos delitos distintos, a tal extremo que puede existir el definido en el artículo 132 sin que se hubiere dado u ofrecido dádiva alguna, como por ejemplo, cuando el testigo ofreciere recibir la dádiva en la inteligencia de que ésta habría de influir en su testimonio o hacer que se ausente del juicio o procedimiento en el cual se requiera que testifique. A esa conclusión llegó este tribunal en el caso de *Forastieri* v. *Calzada,* supra, sosteniendo que el dar y recibir un soborno son

ofensas separadas y distintas y por consiguiente el que lo da y el que lo recibe no son cómplices entre sí, bajo la regla que exige la corroboración del testimonio de un cómplice.

Tampoco es de aplicación el caso de *Pueblo* v. *Montalvo,* supra. Lo que allí se resolvió fué que en proceso por vender armas de fuego en contravención al estatuto que regula su venta, el vendedor y el comprador del arma no son cómplices entre sí a los efectos de la corroboración de la declaración del cómplice. Se dijo en este último caso que el vendedor y el comprador perpetran dos infracciones distintas y por tanto no son cómplices.

En el caso de *Hammer* v. *United States,* supra, citado en la primera parte de la monografía que aparece en 56 A.L.R. 407, invocado por el fiscal, los hechos son sustacialmente iguales a los del de autos. Pueden resumirse así: Annie Hammer fué adjudicada en quiebra el 28 de abril de 1923 y el caso fué remitido a uno de los *referees* del distrito. Se imputaba a la Sra. Hammer que el 25 de octubre de 1923 sobornó e indujo a Louis H. Frinz a prestar juramento ante el *referee* y allí y entonces testificó que con anterioridad al 18 de abril de 1923, él, Frinz, había prestado a la quebrada la cantidad de $500 y que ella a su vez le había extendido y entregado un pagaré por dicha suma. En el juicio se probó satisfactoriamente que Frinz prestó la declaración en el procedimiento de quiebra que luego se alegó ser falsa, instigado por la acusada Hammer. Frinz fué el único testigo llamado para probar la falsedad de su propia declaración, así como la instigación. Declaró él que prestó la declaración a que se refería la acusación; que era falsa, y que la acusada Hammer lo había sobornado. Al terminar toda la prueba de cargo, la ahora peticionaria Hammer solicitó de la corte sentenciadora que instruyese al jurado traer un veredicto a su favor, alegando que la declaración no corroborada de Frinz era insuficiente para sostener un veredicto de culpabilidad contra ella. La moción fué denegada y a petición del fiscal la corte instruyó al jurado

que la ley no exigía tal corroboración del testimonio de Frinz y que si ellos le daban crédito, tal declaración era suficiente. Convicta y sentenciada la acusada, llegó el caso por *certiorari* a la Corte Suprema de Estados Unidos, y dicho tribunal, al revocar la sentencia de la Corte de Circuito que a su vez había confirmado la de la corte sentenciadora, entre otras cosas dijo que la regla general en casos de perjurio es al efecto de que la declaración no corroborada de un testigo es insuficiente para establecer la falsedad del testimonio que se alega ser falso en la acusación; que la aplicación de esa regla en las cortes federales y estatales es casi universal; que aplicarla en casos de perjurio y no en casos de instigación a perjurio conduciría a resultados irrazonables; que el artículo 332 del Código Penal Federal abolió la distinción entre principales y autores y los hizo principales a todos; que el que induce a otro a cometer perjurio es cómplice de instigación a perjurio de acuerdo con el artículo 126 del mismo Código y a virtud del artículo 332 es también culpable de perjurio. En otras palabras, que instigación a perjurio es igual que perjurio; que una persona acusada de perjurio y otra de instigación a perjurio pueden ser acusadas y juzgadas conjuntamente; que es obvio que la misma regla de evidencia con respecto a establecer la falsedad de la declaración alegada como falsa debe aplicarse a ambas; que la evidencia insuficiente para probar tal falsedad en cuanto a una persona acusada de perjurio no puede razonablemente sostenerse que sea suficiente en cuanto a otra acusada de instigación a perjurio; que tal distinción no puede ser sostenida; que la falsedad es tan esencial en uno como en otro delito, siendo el corpus delicti en ambos.

Parece conveniente aclarar, como lo hace la Corte Suprema de Estados Unidos en el caso de *Hammer,* supra, que al prescribir nuestra Ley de Evidencia que la evidencia directa de un solo testigo, aunque merezca entero crédito, no es suficiente para probar la falsedad de una materia que se dice ser falsa, no se refiere a la clase o grado de otra evidencia

que pueda requerirse para establecer ese hecho. "Sin duda", como dice aquel tribunal, "documentos que procedan del acusado y las circunstancias concurrentes, pueden constituir mejor evidencia de la falsedad que cualquier cantidad de testimonio oral."

*Siendo insuficiente la prueba que sirvió de base a la sentencia apelada, procede su revocación y en su lugar dictar otra absolviendo libremente al acusado.*