MIGUEL ÁNGEL ROMERO NÁTER, peticionario y apelado, *v.* JAMES M. JONES, ALCAIDE DE LA PENITENCIARÍA ESTATAL, recurrido y apelante.

Número 11378.

*Sometido:* 2 de febrero de 1955.  *Resuelto:* 29 de julio de 1955.

Hon. Secretario de Justicia Interino J. B. Fernández Badillo y Rafael L. Ydrach Yordán, Fiscal del Tribunal Supremo, abogados del apelante; Santos P. Amadeo, abogado del apelado.

EL JUEZ ASOCIADO SEÑOR SIFRE emitió la opinión del Tribunal.

La cuestión envuelta es si erró el Tribunal Superior, Sala de San Juan, al dictar resolución declarando con lugar la

petición de hábeas corpus presentada por el apelado solicitando que se ordenara su excarcelación por no haber tenido ayuda de abogado en un proceso por asesinato en primer grado, en el que fué declarado culpable por un jurado y sentenciado a la pena de reclusión perpetua. De esa resolución apelaron El Pueblo de Puerto Rico y James M. Jones, Alcaide de la Penitenciaría Estatal.

El apelado fué procesado en el Tribunal Superior, Sala de Arecibo, ([1]) juntamente con José Jaime Delgado. El día señalado para la vista de la causa, comparecieron los dos acusados, así como el letrado Esteban Susoni, abogado de ambos según los autos. La corte preguntó si los procesados estaban representados por dicho abogado, contestando afirmativamente José Jaime Delgado, y diciendo el apelado que su abogado era el Lcdo. Roberto Martínez, quien no estaba presente. En el curso del diálogo que se transcribe en el escolio 2, ([2]) el letrado Esteban Susoni informó al tribunal que había

---

([1]) La acusación presentada contra dichos procesados lee en parte así:

"Que los referidos acusados Miguel Ángel Romero Náter y José Jaime Delgado allá en, o por el día 25 de octubre de 1951, en el Bo. Unibón de Morovis, Puerto Rico, que forma parte del Distrito Judicial de Puerto Rico, Sección de Arecibo, P. R., allí y entonces, ilegal, voluntaria, maliciosa y criminalmente, con malicia premeditada y expresa y propósito firme y deliberado de darle muerte, demostrando tener un corazón perverso y maligno, acometieron y agredieron con los puños, amarrándole luego una pieza de su ropa por el cuello a la niña Sofía Soto, causándole la ruptura y oclusión de la tráquea, a consecuencia de todo lo cual falleció ilegalmente la referida niña Sofía Soto, de axfixia por estrangulación."

([2]) "Hon. Juez: ¿Usted fué citado, joven?

"Acusado Romero Náter: Sí, señor.

"Hon. Juez: ¿Y el otro?

"Márshal: Está preso; viene ya, señor Juez.

"Hon. Juez: Ustedes tienen solamente al Lcdo. Susoni.

"Acusado Romero Náter: Roberto Martínez.

"Hon. Juez:—¿Y usted, joven?

"Acusado Delgado: Susoni.

"Hon. Fiscal: Señor Juez, estábamos abajo organizando la prueba.

"Hon. Juez: Tenga la bondad de decir la Secretaria si el Lcdo. Martínez es abogado de récord del acusado.

"Lcdo. Susoni: Él no es abogado de récord. Ahora, el tío de Miguel Ángel Romero habló con Roberto Martínez para la defensa del caso. Él le dijo que sí, y entonces me pidió a mí, como yo soy abogado del otro

dejado de representar al apelado; que éste o uno de sus familiares había seleccionado al Lcdo. Martínez para que le representara en el juicio, y que dicho abogado le había pedido que solicitara de la corte que le esperara hasta las diez o diez y media de la mañana. El tribunal, fundándose principalmente en que el Lcdo. Esteban Susoni aparecía como abogado de récord de ambos procesados, desde que les fuera leída la acusación, optó por dar comienzo al juicio, resolviendo que el referido letrado podía empezar "en el inicio del caso", como abogado de los dos inculpados, a lo que asintió el Lcdo. Susoni, con la salvedad que de tenerse que dar comienzo a la presentación de la prueba estando ausente el abogado Martínez, se le estaría imponiendo "la defensa de un acusado que no la ha solicitado", añadiendo que existía la posibilidad de que resultara incompatible que el mismo letrado representara a ambos procesados, pero sin que diera explicación alguna sobre la posible incompatibilidad.

---

acusado, si la corte le podría esperar hasta las diez o diez y media en que él estará de regreso.

"Hon. Juez: El compañero puede empezar en el inicio del caso como abogado de récord de los dos.

"Lcdo. Susoni: Yo era abogado primeramente de los dos; después él buscó el otro abogado. Yo no tendría inconveniente en que el caso empezara.

"Hon. Juez: Lo que produce la manifestación del compañero en cuanto a Roberto, es que Roberto se ha evitado un desacato. Pero como tiene otro abogado y le expresó al abogado Susoni los motivos para no comparecer y que se tuviera siempre como abogado de récord, entonces no ha pasado nada. ¿Entonces el caso ha de verse por jurado?

"Lcdo. Susoni: Por jurado.

"Hon. Fiscal: ¿Me permitiría, señor Juez, cinco minutos, porque los testigos están en la oficina mía?

"Hon. Juez: Vamos a formar el jurado y después cambia impresiones con los testigos.

"Hon. Fiscal: Vengo en seguida, señor Juez. Estamos listos, señor Juez.

"Hon. Juez: Vamos a comenzar la desinsaculación. ¿Compañero Susoni, los abogados que van a intervenir solamente son dos?

"Lcdo. Susoni: El compañero Roberto Martínez en representación de este acusado y yo.

"Hon. Juez: ¿Los fiscales quiénes son los que van a actuar?

"Hon. Fiscal Porrata Doria: El Pueblo de Puerto Rico está representado en este caso por el Fiscal que habla, Santiago Porrata Doria, por el Fiscal Ruiz y por el Fiscal Crespo.

Empezó la vista del caso, y el abogado Susoni representó a los dos encausados durante la desinsaculación del jurado. Constituído éste, y antes de que El Pueblo empezará a ofrecer su evidencia, decretó el tribunal un receso para dar tiempo a que llegara el Lcdo. Martínez, y al éste comparecer, se reanudó la sesión y prosiguió el juicio. José Jaime Delgado continuó siendo representado por el letrado Susoni, y el apelado de ahí en adelante lo fué por el abogado Martínez. José Jaime Delgado fué declarado culpable de asesinato en segundo grado, y el apelado de asesinato en primer grado. Posteriormente, presentó este último la petición de hábeas corpus que dió lugar a la resolución apelada.

Mientras se sostiene por los apelantes que el Tribunal Superior, Sala de San Juan, incidió en error al dictar dicha resolución, arguye el apelado que no tuvo asistencia legal "activa y efectiva, no ya durante la insaculación del jurado, sino tampoco durante el resto del proceso", alegando que "se

---

"Lcdo. Susoni: Señor Juez, yo quiero anticipar a la corte la siguiente situación: Aunque el compañero Martínez me expresó que él estaría aquí, suponiendo que él no estuviese cuando empiece a desfilar la prueba, estaría entonces la corte imponiéndome, imponiéndole a este abogado la defensa de un acusado que no se la ha solicitado.

"Hon. Juez: Independientemente de la cuestión de Martínez, que yo la resolvería de un modo distinto a como la resolví primero, porque el compañero Martínez me dijo su señoría que él estaría aquí más tarde, y usted me dijo que había sido abogado de récord de ambos acusados. Si no compareciere y el compañero cree que es fuerte la labor para el compañero, y que los acusados podrían lesionarse en su derecho de defensa, la corte mandaría a arrestar inmediatamente a Roberto Martínez y le condenaría por desacato.

"Lcdo. Susoni: Pero eso no resolvería la situación. Pudiera ser que la defensa de un acusado sea incompatible con la defensa del otro.

"Hon. Juez: Eso lo debió ver el compañero Susoni y aclarar eso.

"Lcdo. Susoni: Yo en ningún momento me he entrevistado con el acusado Miguel Ángel Romero Náter.

"Hon. Juez: Aparece del récord.

"Lcdo. Susoni: El haber el acusado solicitado la representación de un abogado para ~~~ ya yo me excluí por completo y no intervengo con él.

"Hon. Juez: La c~~~to no cree así. Usted debió haber renunciado la representación.

"Lcdo. Susoni: No lo hicimos, porque ~~ sabía que estaba representado por otro abogado. El compañero Martínez me ~~~ lo siguiente: que él

le impuso ... la representación profesional de un abogado que no era el suyo", refiriéndose a la intervención del Lcdo. Susoni en la constitución del jurado; que el tribunal al negarse a suspender la vista hasta que llegara el abogado Martínez, y al permitir "que se desinsaculara el jurado en ausencia" de dicho letrado, le privó del derecho a "tener asistencia de abogado seleccionado por él en todos los pasos del procedimiento", y finalmente, que el letrado Martínez "vino a enterarse de los hechos del caso el mismo día en que empezó el proceso y no tuvo tiempo, por lo tanto, de preparar la defensa del ... apelado".

Los acusados fueron representados en el acto de la lectura de la acusación por el Lcdo. Esteban Susoni, y éste continuó como abogado de récord de ambos, como hemos dicho, hasta el mismo día del juicio, primera ocasión en que fué informado el tribunal de que al apelado no le representaría dicho abogado por haber seleccionado un nuevo letrado. Desde que se leyó la acusación al apelado, hasta el día fijado para la vista de la causa, transcurrieron más de seis meses.

---

estará aquí de 10 a diez y media. Suponiendo que empiece la prueba. Yo supongo que la selección del jurado nos podrá tomar un poco de tiempo; ahora, si él no está aquí cuando eso ...

"Hon. Juez: No podemos saber el tiempo todavía. Vamos a seguir. Del récord no aparece que Roberto Martínez sea abogado. Así que yo sería un poco ligero al ordenar que se trajera arrestado a Martínez, porque él no aparece del récord aquí como abogado de récord. No tengo aquí nada más que las manifestaciones del acusado en primer término, y después las manifestaciones del abogado. El que aparece como abogado de récord es el Lcdo. Esteban Susoni.

"Lcdo. Susoni: El propio acusado le puede expresar a la corte que el abogado de él es Roberto Martínez. Él no se ha entrevistado nunca conmigo.

"Hon. Juez: Pero tal vez por sus múltiples ocupaciones; si no hubiera sido por eso quizás se hubiera entrevistado con él.

"Lcdo. Susoni: Este acusado ha venido a mi oficina en infinidad de veces con el padre y nosotros tenemos conocimiento de este caso en relación con él; pero no siendo abogado del otro acusado, no he tenido necesidad de ver si la defensa es incompatible con la defensa del otro.

"Hon. Juez: Del expediente se puede constatar, de la minuta no hay ninguna designación del compañero, espere para algo, sino que la comparecencia es general del abogado para todo caso, no solamente para la lectura de la acusación."

Sin embargo, no ofreció razón alguna para explicar y justificar la tardanza en cambiar de abogado y nombrar al Lcdo. Martínez. Demuestran los autos que al reanudarse el juicio, éste informó al tribunal que su cliente había solicitado sus servicios esa mañana, pero en ningún momento protestó de que hubiera comenzado la vista estando él ausente, ni de que el abogado Susoni le hubiera representado durante la desinsaculación del jurado, que en efecto fué aceptado tal como había quedado constituído. De ahí en adelante el letrado Martínez participó activamente en la vista del proceso, que no fué complicado, en representación del apelado, después de haber manifestado al magistrado que presidía la Sala sentenciadora, que estaba en condiciones de hacerlo. (³)

¿Es correcto decir, en vista de esos hechos, que al apelado se le negó el derecho a tener ayuda y asistencia de abogado de su propia elección? Indudablemente que no. Ese derecho debe ser celosamente protegido por los tribunales, pero el procesado no debe ser renuente en ejercitarlo, *Pueblo* v. *González*, 50 D.P.R. 195; *Neufield* v. *United States*, 118 F.2d 375, ni usarlo para obstaculizar el trámite normal de las causas. No debe esperar hasta el último instante para nombrar abogado—a menos que lo impidan razones meritorias—para después, si el resultado del proceso le es adverso, y basándose en su propia omisión y en su propia falta de diligencia, sostener que se le negó el derecho. Sancionar lo que aquí repudiamos equivaldría a establecer un precedente en extremo perjudicial para la ordenada administración de justicia en la esfera de lo penal. Tendría el efecto de concederle a los inculpados el dominio sobre los calendarios de las cortes, colocándoles en condiciones de resolver cuándo han de ventilarse los procesos, proporcionándoles fácil medio para lograr la posposición de las vistas a su antojo,

---

(³) Aunque en la vista del hábeas corpus el aquí apelado declaró que no había conferenciado con el abogado Martínez antes del juicio, y que éste no le había preguntado si tenía testigos, dicho abogado testificó que el apelado le explicó la prueba y la defensa que tenía, y le trajo un testigo.

con simplemente aguardar hasta el último instante para designar o cambiar abogado.

Al apelado le incumbía demostrar en el procedimiento de hábeas corpus que se le privó del derecho a tener ayuda y asitencia de un letrado de su propia selección, y no lo logró. Estamos plenamente convencidos de que la Sala sentenciadora no abusó de su discreción al resolver, enfrentada con un problema creado por el propio apelado, que debía iniciarse el juicio, y que el Lcdo. Susoni, debía representarle durante la constitución del jurado. Por otro lado, lo estamos igualmente de que tampoco demostró que fuera perjudicado por la actuación del tribunal, (4) *Urban* v. *United States*, 46 F.2d 291, ni que no fuera activa y diligente la asistencia legal que tuvo durante el resto de la vista, una vez que el Lcdo. Martínez se personó en corte, o que lo hubiera sido en mayor grado de haber tenido dicho letrado tiempo adicional para prepararse, lo que de todos modos, no solicitó.

Los casos citados por el apelado son inaplicables a los hechos y circunstancias que concurren en el de autos.

Somos de opinión que le asiste la razón al apelante al sostener que erró el tribunal a quo al dictar la resolución apelada. *Por lo tanto dicha resolución deberá ser revocada y declarada sin lugar la petición.*

---

(4) Hemos tenido en cuenta que según la prueba de cargo los procesados al ser detenidos, hicieron manifestaciones acusándose mutuamente, pero la discrepancia entre ellos aparentemente se refería al alcance de la participación que cada uno había tenido en el hecho criminoso, y no a que uno o el otro alegara ser inocente. También hemos considerado las manifestaciones hechas más tarde por José Jaime Delgado en el curso de la investigación.