EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PABLO MOJICA PEDROZA, acusado y apelante.

*Números:* CR-64-504-506 *Resueltos:* 13 de octubre de 1965

*Jorge López Santiago* y *Antonio Andino*, abogados del apelante; *J. B. Fernández Badillo*, Procurador General, *Rodolfo Cruz Contreras*, Procurador General Interino, y *Héctor R. Orlandi Gómez*, Procurador General Auxiliar, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Este es un caso fronterizo pero dada la importancia de la cuestión planteada vamos a revocar y a ordenar un nuevo juicio.

El apelante fue acusado de los delitos de acometimiento y agresión grave, e infracción al Art. 8 y al Art. 6 de la Ley de Armas. Los casos fueron ventilados conjuntamente en el Tribunal Superior, Sala de San Juan; los dos primeros ante jurado y el tercero por tribunal de derecho. El acusado fue declarado culpable de los tres delitos que se le imputaron y no estando conforme con dicho resultado apeló ante nosotros.

Señala dos errores. El primero, que el acusado no tuvo la debida asistencia legal. El segundo, que el fallo es contrario a la prueba y a derecho. Incluye en el segundo error una impugnación a las instrucciones al jurado. Hemos examinado la transcripción de evidencia y los autos, y encontramos mérito en el primer señalamiento.

En 12 de noviembre de 1963 el acusado y su abogado, el Lcdo. Antonio Andino Elías, comparecieron al tribunal previa orden del mismo. Aceptó el acusado tener copia de las acusaciones y, con su anuencia, se dieron por leídas. Se señaló la vista de los casos para el 17 de diciembre de 1963. La minuta de ese día lee como sigue:

"A la vista de este caso compareció la Lcda. Anatilde Rivera de Morales y no el acusado. La Lcda. alega que en la fecha anterior había comparecido el Lcdo. Antonio Andino Elías.

"Más tarde compareció el Lcdo. Andino Elías con el acusado y alegó que como estos casos son del Salón II ellos estaban allá. Los casos se están viendo en el día de hoy en el Salón V.

"El Tribunal pospone la vista de estos casos para el día 27 de febrero de 1964, a las nueve de la mañana.

"El acusado citado en corte abierta y notificado su abogado.

"Los testigos Ramón Maldonado, Jorge T. Clemente y Florencio Figueroa citados en corte abierta. Cítese el resto de la prueba."

En 29 de enero de 1964, la Lcda. Ludmilia Rivera Burgos, de la Sociedad Para Asistencia Legal, radicó una Moción Sobre Sustitución de Abogado en la cual expresaba que el caso

estaba señalado para el 27 de febrero de 1964 y que ella representaría al acusado en el juicio. De los autos no aparece que el tribunal tomase acción alguna sobre esta moción.

La minuta del 27 de febrero de 1964, el día del juicio, comienza con los siguientes dos párrafos:

"Se llamaron estos casos para vista, y compareció El Pueblo de Puerto Rico representado por su Fiscal Hon. Wilfredo Figueroa Vélez, y el acusado en persona y sin su abogado.

"Apareciendo que el abogado de récord de este acusado lo es el Lcdo. Andino Elías, quien estaba ocupado en el salón 3 de este tribunal, el tribunal en este acto designó a los Lcdos. Ludmilia Rivera Burgos y Juan Arbona Torres para asumir la representación profesional de este acusado. Habiendo comparecido el Lcdo. Andino Elías al tribunal más tarde, el tribunal le notificó de la designación de dichos letrados en el día de hoy, y lo releva de toda responsabilidad profesional."

La transcripción de evidencia revela que inmediatamente luego de que la secretaria llamó los casos tuvo lugar el siguiente diálogo:

"HON. JUEZ: La compañera Rivera Burgos estaba en autos como abogada de este acusado desde el veintinueve de enero del sesenticuatro y entonces el tribunal designó también al compañero Arbona en la mañana de hoy para entender en la vista de este caso una vez que el tribunal dió retirada la representación del Lic. Andino como abogado de este acusado por haber estado ausente de esta Sala entendiendo en un caso, a pesar de que había sido notificado desde noviembre de este señalamiento para hoy. ¿Cuál es la situación? ¿Están listas las partes?

"Lcda. RIVERA BURGOS: En este caso hemos entrevistado al acusado y nos hemos enterado de que el acusado ha estado recluído en el Hospital de Siquiatría debido a una enfermedad mental. O sea, no hemos podido investigar el caso; no hemos podido hablar con los doctores e ir al Hospital de Siquiatría; por lo que no estamos preparados y en condiciones de entrar a juicio.

"HON. JUEZ: Colega, pero, bendito sea Dios! Aquí aparece en autos, usted aparece en autos como abogada de este acusado desde noviembre . . . . ¿Desde qué fecha dije? El veintinueve de enero del sesenticuatro.

"Lcda. RIVERA BURGOS: Su Señoría, recuerde que este acusado contrató un abogado, le pagó su dinero al abogado; el abogado estudió el caso, entonces hoy es que realmente yo he venido a conversar con el acusado aquí. El acusado estaba en la seguridad de que su abogado lo venía a representar.

"HON. JUEZ: ¿De qué padecimiento es que estaba este acusado . . .

"Lcda. RIVERA BURGOS: Su Señoría, no le puedo decir.

"HON. JUEZ: Pues, entonces yo no tengo base . . .

"Lcda. RIVERA BURGOS: Yo no soy perito médico ni siquíatra, ni el acusado tampoco es perito siquíatra.

"HON. JUEZ: Entonces al tribunal no se ha puesto en condiciones de determinar que el acusado pueda o no pueda estar ahora en condiciones de entrar a juicio para nombrar un tribunal de peritos . . .

"Lcda. RIVERA BURGOS: Su Señoría . . .

"HON. JUEZ: Sí; porque el mero hecho de que Su Señoría le diga al tribunal que ha estado recluído en una, en un hospital no es suficiente para que yo ordene un examen médico.

"Lcda. RIVERA BURGOS: Su Señoría, no estamos pidiendo que se ordene un examen médico, estamos pidiendo la suspensión para estudiar el caso y para entrevistar la prueba, si creemos conveniente, e ir al Hospital de Siquiatría para estudiar el expediente.

"HON. JUEZ: Sin lugar. Este acusado ha tenido tiempo suficiente para ver a su abogado. Se le va a ver este caso. Esa es culpa de él.

"Lcda. RIVERA BURGOS: Queremos manifestar que no estamos preparados para entrar a juicio.

"HON. JUEZ: Hágalo así constar. Siéntese el acusado. Adelante. Llámese un jurado. El compañero Arbona está familiarizado con los hechos del caso. El compañero Arbona representó a un coacusado con este señor que se llama Felipe Morales Vázquez.

"Lic. ARBONA: Eso es así. Estamos familiarizados, pero también mantenemos la contención de la compañera. El nos ha manifestado que estuvo recluído allá en Nueva York, luego estuvo recluído aquí en Puerto Rico en el Hospital de Siquiatría por un

padecimiento mental; y que él dejó el hospital de siquiatría por su cuenta. O sea, que no ha sido que lo den de alta. No podemos saber si está facultado en el momento para entrar a juicio y si lo estaba o no lo estaba para la fecha de los hechos en cuanto a los hechos del caso y conocimientos del caso.

"HON. JUEZ: Llámese un jurado.

"Lcda. RIVERA BURGOS: Su Señoría, queremos hacer constar que no estamos preparados para insacular un jurado.

"HON. JUEZ: Llámese un jurado."

De lo anteriormente citado de las minutas y del récord, se desprende que el acusado creía que su abogado era el Lcdo. Andino; que éste no compareció al juicio porque ese día estaba viendo otro caso en otra sala; que en vista de eso el tribunal lo relevó de responsabilidad en este caso y ordenó que el mismo se viese con dos abogados—la Lcda. Ludmilia Rivera Burgos y el Lcdo. Arbona—los cuales expresaron reiteradamente que no estaban preparados para ver el caso. La posición de los letrados no era frívola porque del récord surge que iban a descansar en la defensa de locura y de las circunstancias en que comenzaron a ver el caso demuestran que en verdad no estaban preparados. Comprendemos y encomiamos el esfuerzo del magistrado sentenciador por expeditar los trabajos de su Sala, pero creemos que, dadas las circunstancias específicas de este caso, el magistrado se excedió.

Hemos dicho que el caso es fronterizo porque la Lcda. Rivera Burgos había informado al tribunal mediante su moción de 29 de enero de 1964 que ella representaría al acusado en el juicio. Sin embargo, el día de la vista la misma Lcda. Rivera Burgos informa al Tribunal que ". . . hoy es que realmente yo he venido a conversar con el acusado aquí. El acusado estaba en la seguridad de que su abogado lo venía a representar." No sabemos si la indefensión del acusado al comienzo de la vista fue debido a negligencia de la Lcda. Rivera Burgos, a exceso de trabajo que ella tuviese o a cualquier otra causa, justificada o no. Con razón protestó el magis-

trado sentenciador señalando que la licenciada aparecía en autos como abogado del acusado desde el 29 de enero de ese año. Sin embargo, no estamos convencidos de que el tribunal sentenciador actuó bien al relevar de su responsabilidad al Lcdo. Andino cuando la propia Lcda. Rivera Burgos parecía creer que el Lcdo. Andino representaría al acusado en el juicio.

 Es cierto que los acusados, al ejercer su derecho de escoger sus abogados asumen también la responsabilidad de quedar obligados por ellos y se ponen en la situación de ser favorecidos por la diligencia de los mismos o de ser perjudicados por la falta de ella. Sin embargo, un examen cuidadoso del récord de este caso nos deja el convencimiento de que el acusado no tuvo la oportunidad que debió tener de prepararse para el juicio. Recae sobre nosotros en este Tribunal el deber de examinar cuidadosamente el récord para ver si las formalidades y el ritual judicial ejecutados en verdad contienen la substancia de debido proceso de ley que se supone que contengan. Sin la substancia que les da su razón de ser, las formalidades son peor que nada.

Nada de lo que aquí resolvemos conflige con lo resuelto en *Pueblo* v. *Barriera González*, 89 D.P.R. 772 (1964). Allí los hechos fueron distintos. En *Barriera*, llamado el caso para vista el 11 de abril de 1962, el tribunal señaló para el 18 del mismo mes la vista de una moción de la defensa sobre examen siquiátrico y pospuso la vista del caso en su fondo para el 22 de mayo de 1962. Se celebró la vista sobre la moción del examen siquiátrico; declararon los facultativos e informaron que el acusado estaba en estado procesable y se señaló de nuevo el caso para el 14 de junio de 1962. Dicho día, llamado el caso para juicio, la defensa solicitó la posposición del mismo por no estar preparada para la vista. Accedió el tribunal y pospuso la vista para el 24 de julio de 1962. El 23 de julio la defensa radicó una nueva moción de suspensión, la cual fue declarada sin lugar. Allí dijimos:

"Surge de esta relación que desde el 23 de marzo de 1962, fecha en que el Tribunal designó a los letrados Lloréns y Colón para que representasen al acusado, hasta la fecha del comienzo del juicio, el 24 de julio de 1962, transcurrieron cuatro meses. No puede dicirse que el Tribunal de instancia abusó de su discreción al no consentir a la última suspensión del juicio antes mencionada. *Pueblo* v. *Rodríguez Correa,* 88 D.P.R. 653 (1963); *Pérez Gómez* v. *Delgado,* 83 D.P.R. 346, 347 (1961); *Romero* v. *Jones,* 78 D.P.R. 572, 577 (1955). Como dijimos en *Romero* v. *Jones,* supra, a la pág. 577, no podemos entregarle a los acusados el dominio sobre los calendarios de los tribunales de justicia. No se cometió el primer error señalado."

Como puede verse, en *Barriera,* el acusado tuvo plena oportunidad de prepararse para la vista. Como hemos indicado, el récord del presente caso no nos imparte esa convicción. (¹)

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 6 de marzo de 1964 en este caso, y se ordenará un nuevo juicio.*

---

(¹) Acompañamos un Apéndice, que aunque no es exhaustivo, creemos que contiene los pasos más importantes en el desarrollo jurisprudencial del derecho de asistencia de abogado en la jurisprudencia federal de los Estados Unidos y en Puerto Rico.