EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RA-FAEL SORIANO BÁEZ, acusado y apelante.

*Números:* CR-66-220 al CR-66-223    *Resueltos:* 29 de marzo de 1967

*A. de Jesús Matos, R. de Jesús Cintrón* y *Santos P. Amadeo,* abogados del acusado; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Lolita Miranda de Escudero, Procuradora General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante fue convicto por un jurado de los siguientes tres delitos: ataque para cometer asesinato; infracción al Art. 8 de la Ley de Armas e infracción al Art. 6 de la Ley de Armas. También fue convicto por el Tribunal por una infracción al Art. 4 de la Ley de Armas. [1]

---

[1] 33 L.P.R.A. sec. 732; 25 L.P.R.A. secs. 418, 416 y 414. En los procesos por delito grave el acusado tiene derecho a juicio por jurado, Constitución de Puerto Rico, Art. II, Sección 11. Los procesos por delito menos grave se ven ante tribunal de derecho.

De la prueba surge que los delitos se cometieron en las siguientes circunstancias. Mientras una patrulla de la policía arrestaba a un acompañante varón del acusado que viajaba con él en el mismo carro, en horas de la madrugada, en la barriada La Perla de San Juan, el acusado se bajó del vehículo, sacó una pistola y apuntándola al cuello del policía José M. Ayala Muriel haló el gatillo. El martillo de la pistola emitió el sonido metálico "clic," "mascó" el casquillo de la bala y el tiro no salió. También portaba el acusado lo que los testigos llamaron un "fuete-fisga" que es un arma cuya apariencia exterior es la de una fusta pero que al halarle su cubierta queda expuesto un estilete o punzón de acero.

En apelación señala como único error que el Tribunal le privó de una adecuada defensa. Argumenta que no tuvo tiempo para prepararse.

Si sólo se leen los fragmentos que de la transcripción de evidencia presenta el apelante en su memorando se llegaría a la conclusión de que el error señalado se cometió. Pero ningún tribunal que valga la pena ha de fallar oyendo a una sola parte. Hemos leído los alegatos de las partes, examinado los autos y también hemos leído íntegramente la transcripción de evidencia que consta de 181 páginas. Leyendo íntegra la transcripción de evidencia tenemos ante nos el cuadro completo de lo que ocurrió en el juicio, cosa que entendemos necesaria para poder decidir sobre el error planteado. Para formar juicio sobre el error alegado, es necesario que hagamos una concisa cronología de los hechos pertinentes a dicha cuestión.

■ Los hechos ocurrieron el 12 de octubre de 1964. Las acusaciones por las infracciones a los Arts. 4 y 6 de la Ley de Armas fueron presentadas en 29 de octubre de 1964 y las acusaciones por la infracción al Art. 8 de dicha ley y por el ataque para cometer asesinato se presentaron el 29 de diciembre del mismo año.

Se señaló el 22 de enero de 1965 para el acto de la lectura de las acusaciones. El acusado compareció sin abogado y el Tribunal le designó un abogado para que lo representase en ese acto. Se dieron por leídas las acusaciones y se le entregó copia de las mismas al acusado a través de su abogado. El acusado hizo alegación de no culpable, solicitó juicio por jurado en aquellos casos en que esto procedía, y solicitó que los casos fuesen vistos conjuntamente. Ese mismo día el Tribunal designó al Lcdo. Roberto de la Torre, entonces Jefe de la Sociedad de Asistencia Legal, para que representara al acusado en estos casos e instruyó al acusado para que se entrevistase con dicho abogado o con cualquier otro abogado de la Sociedad de Asistencia Legal, cosa que el acusado nunca hizo. Ese mismo día, 22 de enero de 1965, el Tribunal señaló la vista de los casos para el 24 de febrero de ese año. Surge, pues, que habiéndosele entregado copia de las acusaciones al acusado ese día, se le designó abogado y se le dio un primer término de un mes y dos días para prepararse para el juicio.

El día fijado para la vista, 24 de febrero de 1965, volvió el acusado a comparecer sin abogado e informó que había contratado los servicios del Lcdo. Bultrón e informó que interesaba la suspensión del juicio. Accedió el Tribunal a la petición de suspensión y suspendió la vista de los casos, señalándolos para el 3 de marzo de 1965. Previendo el caso de que el acusado no tuviese abogado, el Tribunal le designó a la Lcda. Anatilde Rivera de Morales, de la Sociedad de Asistencia Legal, para que representase al acusado en el juicio. La Lcda. Rivera de Morales quedó notificada.

El 3 de marzo de 1965 el acusado compareció al Tribunal con el Lcdo. Benicio Sánchez Rivera y solicitó otra vez la suspensión de la vista alegando como justificación de su solicitud el no estar preparado para entrar a juicio. Esta vez, el Tribunal declaró sin lugar la moción de suspensión y dispuso que si el Lcdo. Sánchez Rivera no asumía la represen-

tación del acusado, entonces lo representaría el Lcdo. Maldonado Pabón de la Sociedad de Asistencia Legal, quién ya había comparecido en autos como abogado defensor y en representación de dicha Sociedad de Asistencia Legal. El Lcdo. Sánchez Rivera solicitó que lo relevasen de la defensa del acusado y el Tribunal accedió a lo solicitado. Esto ocurría por la mañana; el Tribunal suspendió los procedimientos para darle tiempo a la defensa y pospuso la vista para las dos de la tarde.

Dicho día 3 de marzo por la tarde se llamó de nuevo el caso para juicio. Intervino entonces el Lcdo. Richard Ramos Algarín y dirigiéndose al Tribunal le dice: "Si usted me permite asumir la representación con la compañera de Asistencia Legal (Anatilde Rivera de Morales) me gustaría unirme al caso." El Tribunal accede y le informa que el caso se va a ver ese día, a lo que el Lcdo. Ramos Algarín contesta "Muy bien." El Lcdo. Maldonado Pabón, de la Sociedad de Asistencia Legal, solicitó ser relevado y el Tribunal accedió.

Habiendo quedado la situación en que el acusado sería representado por los abogados Ramos Algarín y Anatilde Rivera de Morales, el Tribunal preguntó al fiscal y a la defensa si estaban preparados para entrar a juicio y ambas partes contestaron en la afirmativa. (T.E. pág. 17.)

El juicio se vio durante los días 3, 4 y 5 de marzo de 1965. El acusado estuvo representado por los dos abogados Anatilde Rivera de Morales y Richard Ramos Algarín.

La transcripción de evidencia revela los esfuerzos del Tribunal para obtener los nombres y direcciones de los testigos de defensa y para hacerlos comparecer. La prueba de cargo consistió de la declaración de los policías José M. Álvarez y José M. Ayala Muriel. La prueba de defensa consistió de las declaraciones de Ricardo MacLin Escalera, Tiburcio Pérez y Pascuala Pintado. Por considerar su declaración de naturaleza acumulativa el fiscal desistió de pre-

sentar un tercer testigo y lo puso a disposición de la defensa, quién no lo utilizó.

El récord demuestra que los abogados de la defensa llevaron a cabo una defensa enérgica y diligente. Como puede esperarse, la teoría de la defensa y la teoría del fiscal confligen entre sí. El jurado dirimió el conflicto.

■ Es materia de sentido común, y ya lo hemos resuelto anteriormente, que el derecho que siempre reconocemos y que reconoce nuestra Constitución, de tener asistencia de abogado y a prepararse para los juicios, no puede ser utilizado para obstaculizar el trámite de las causas. *Romero* v. *Jones, Alcaide*, 78 D.P.R. 572 (1955); *Pueblo* v. *Barriera González*, 89 D.P.R. 772 (1964). En *Romero* v. *Jones, Alcaide*, supra, dijimos a la página 577:

"Ese derecho debe ser celosamente protegido por los tribunales, pero el procesado no debe ser renuente en ejercitarlo, [citas omitidas] ni usarlo para obstaculizar el trámite normal de las causas. No debe esperar hasta el último instante para nombrar abogado—a menos que lo impidan razones meritorias—para después, si el resultado del proceso le es adverso, y basándose en su propia omisión y en su propia falta de diligencia, sostener que se le negó el derecho. Sancionar lo que aquí repudiamos equivaldría a establecer un precedente en extremo perjudicial para la ordenada administración de justicia en la esfera de lo penal. Tendría el efecto de concederle a los inculpados el dominio sobre los calendarios de las cortes, colocándoles en condiciones de resolver cuándo han de ventilarse los procesos, proporcionándoles fácil medio para lograr la posposición de las vistas a su antojo, con simplemente aguardar hasta el último instante para designar o cambiar abogado."

El error señalado no se cometió. *Se confirmarán las sentencias apeladas.*

El Juez Presidente Señor Negrón Fernández no intervino.